[No. 57300-0.   En Banc.   January 30, 1992.]

*In the Matter of the Personal Restraint of*
CHRISTOPHER L. ST. PIERRE, *Petitioner.*

*Kenneth S. Kagan* and *Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Donna L. Wise, Senior Appellate Attorney,* for respondent.

DOLLIVER, J. — Petitioner Christopher St. Pierre challenges an unpublished Court of Appeals decision dismissing his personal restraint petition. Petitioner seeks the retroactive application of *State v. Irizarry*, 111 Wn.2d 591, 763 P.2d 432 (1988).

In separate trials, petitioner was found guilty of first degree felony murder, first degree kidnapping, and second degree assault in the death of Damon Wells and aggravated first degree murder in the death of John Achord. *State v. St. Pierre*, 111 Wn.2d 105, 110, 759 P.2d 383 (1988). On direct review, we reversed petitioner's conviction for aggravated first degree murder, but affirmed the first degree felony murder conviction. We determined the admission of coconspirators' statements relative to the Achord murder violated petitioner's Sixth Amendment right to confront witnesses, but held that petitioner's Sixth Amendment right was not violated relative to the Wells murder because petitioner's own statements established his guilt. *St. Pierre*, 111 Wn.2d at 120. Our decision in *St. Pierre* was published on July 14, 1988, and amended on July 20, 1988. Petitioner's motion for reconsideration was denied on November 4, 1988.

At the trial of the Wells murder, the court instructed the jury that if it failed to find petitioner guilty of the charged crime of aggravated first degree murder, it could find him guilty of the included offenses of premeditated murder in the first degree, felony murder in the first and second degree, and murder in the second degree. Petitioner specifically objected to this instruction, arguing that felony murder was not a proper included offense of aggravated first degree murder. However, on appeal, petitioner failed to raise the included offense instruction as an error. *St. Pierre*, 111 Wn.2d at 120 n.5.

After *St. Pierre* was published, but before petitioner's motion for reconsideration was denied, we decided *State v. Irizarry, supra.* In *Irizarry*, we concluded felony murder is not an included offense within the offense of aggravated first degree murder. Therefore, we concluded the trial court's instruction treating felony murder as an included offense was a prejudicial error requiring a new trial. *Irizarry*, 111 Wn.2d at 592. The *Irizarry* decision was announced on October 27, 1988, 8 days before petitioner's motion for reconsideration was denied.

Petitioner then brought this personal restraint petition seeking retroactive application of *Irizarry* to his case. By order dated May 31, 1990, the Court of Appeals dismissed the petition. It concluded petitioner's conviction was final as to this issue when *Irizarry* was decided, and petitioner failed to satisfy the requirements for a collateral attack on a conviction. We use a somewhat different analysis but affirm.

Retroactivity analysis has been marked by erratic development since the United States Supreme Court announced the doctrine in 1965. *Linkletter v. Walker*, 381 U.S. 618, 629, 14 L. Ed. 2d 601, 85 S. Ct. 1731 (1965); Comment, Griffith v. Kentucky: *Partial Adoption of Justice Harlan's Retroactivity Standard*, 10 Crim. Just. J. 153 (1987). Nevertheless, we have attempted from the outset to stay in step with the federal retroactivity analysis. *In re Sauve*, 103 Wn.2d 322, 326-28, 692 P.2d 818 (1985).

Prior to *Linkletter*, all new constitutional rules of criminal procedure were applied retroactively. Comment, 10 Crim. Just. J. at 155. In *Linkletter*, the Court first concluded the Constitution neither compels nor prohibits retroactive application of new constitutional rules of criminal procedure. *Linkletter*, 381 U.S. at 629. The Court then developed a 3-prong analysis which focused on (1) the purpose to be served by the new rule, (2) the extent of reliance by law enforcement authorities on the old standard, and (3) the effect of retroactive application on the administration of justice. *Stovall v. Denno*, 388 U.S. 293, 297, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 (1967). From this point, the Supreme Court periodically modified the analysis by injecting new considerations into the formula. First, the Court announced that new rules amounting to a "clear break" with past precedents would not be applied retroactively. *United States v. Johnson*, 457 U.S. 537, 549, 73 L. Ed. 2d 202, 102 S. Ct. 2579 (1982). The Court also created a distinction between direct and collateral review. New rules not amounting to a clear break with precedent would automatically be applied to all convictions not yet final at the time the rule was announced. *Johnson*, 457 U.S. at 562. However, the retroactivity of new rules raised on collateral review would still be evaluated under the three *Stovall* criteria. *In re Taylor*, 105 Wn.2d 683, 691, 717 P.2d 755 (1986). Even where the *Stovall* criteria were still applicable, if the major purpose of the new rule was to remedy a defect in the truth-finding function, retroactive application was required without regard to the other *Stovall* factors. *Ivan V. v. New York*, 407 U.S. 203, 204, 32 L. Ed. 2d 659, 92 S. Ct. 1951 (1972).

By the Court's own admission, the *Linkletter* retroactivity standard led to a series of inconsistent results. *Teague v. Lane*, 489 U.S. 288, 302-04, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989) (O'Connor, J., opinion). Justice Harlan suggested an alternative approach. *See Desist v. United States*, 394 U.S. 244, 258, 22 L. Ed. 2d 248, 89 S. Ct. 1030 (1969) (Harlan, J., dissenting). Justice Harlan argued all new rules, regardless of whether they break with past prece-

dents, must be applied to all cases subject to direct review at the time the rule is announced. *Desist*, 394 U.S. at 258 (Harlan, J., dissenting). However, Justice Harlan viewed collateral attacks differently. He argued new rules of any sort should not be applied retroactively on collateral review, subject to two narrow exceptions: (1) rules which place certain kinds of primary, private individual conduct beyond the power of the state to proscribe, and (2) rules which require the observance of procedures implicit in the concept of ordered liberty. *Mackey v. United States*, 401 U.S. 667, 692-93, 28 L. Ed. 2d 404, 91 S. Ct. 1160 (1971) (Harlan, J., concurring).

■ ■ The Supreme Court has now largely adopted Justice Harlan's analysis. In *Griffith v. Kentucky*, 479 U.S. 314, 328, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987), the Court expressly adopted Justice Harlan's view as to direct review. More recently, a majority of the Court expressly endorsed Justice Harlan's view as to the limitations on collateral review. *Teague*, 489 U.S. at 310 (O'Connor, J., opinion), 317 (White, J., concurring), 319-20 (Stevens, J., concurring). The current retroactivity analysis may be neatly summarized in a 2-part standard:

1. A new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a clear break from the past. *Griffith*, 479 U.S. at 328.

2. A new rule will not be given retroactive application to cases on collateral review except where either: (a) the new rule places certain kinds of primary, private individual conduct beyond the power of the state to proscribe, or (b) the rule requires the observance of procedures implicit in the concept of ordered liberty. *Teague*, 489 U.S. at 311 (O'Connor, J., opinion).

The Court's past pronouncements as to rules which are a clear break with the past and rules implicating the truth-finding function are no longer applicable.

The critical issue in applying the current retroactivity analysis is whether the case was final when the new rule was announced. Petitioner argues his conviction was not yet final because this court did not deny his motion for reconsideration until 8 days after the rule in *Irizarry* was announced. The State argues petitioner's conviction was final as to the included offense issue because petitioner failed to pursue the issue on direct appeal.

■ The Supreme Court defines "final" for the purposes of retroactivity analysis as follows:

> By "final," we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.

*Griffith*, 479 U.S. at 321 n.6; *United States v. Johnson*, 457 U.S. 537, 542 n.8, 73 L. Ed. 2d 202, 102 S. Ct. 2579 (1982); *Linkletter*, 381 U.S. at 622 n.5. In *Penry v. Lynaugh*, 492 U.S. 302, 314, 106 L. Ed. 2d 256, 109 S. Ct. 2934, 2944 (1989), the Supreme Court determined the defendant's conviction was not final for retroactivity analysis purposes until his petition for certiorari on direct appeal was denied. Therefore, the Court concluded that in his federal habeas corpus petition the defendant was entitled to the benefit of two decisions which were announced prior to the final rejection of his petition for certiorari. *Penry*, at 314-15.

We interpret the Supreme Court's language to contemplate the finality of the case as a whole, not the finality of a single issue. We reject any notion an issue may become final for the purposes of retroactivity analysis before the finality of the case as a whole. A contrary approach would encourage parties to maintain seemingly frivolous claims on appeal in the hope another decision may announce a new rule. Such an approach would result in an inefficient use of judicial resources and distract parties from issues of consequence. Since this court announced the rule in *Irizarry* 8 days before denying petitioner's motion for reconsideration, petitioner's conviction was not yet final and he is entitled to retroactive application of the rule.

■ In order to obtain relief through a personal restraint petition, petitioner must establish by a preponderance of the evidence that the constitutional error worked to his "actual and substantial prejudice". *In re Haverty*, 101 Wn.2d 498, 504, 681 P.2d 835 (1984); *In re Reismiller*, 101 Wn.2d 291, 293, 678 P.2d 323 (1984).

■ We have stated the law of charging documents as follows:

> It is fundamental that under our state constitution an accused person must be informed of the criminal charge he or she is to meet at trial, and cannot be tried for an offense not charged. This rule is subject to two statutory exceptions: (1) where a defendant is convicted of a lesser included offense of the one charged in the information (RCW 10.61.006); and (2) where a defendant is convicted of an offense which is a crime of an inferior degree to the one charged (RCW 10.61.003).

(Footnotes omitted.) *Irizarry*, 111 Wn.2d at 592. *See also State v. Leach*, 113 Wn.2d 679, 687, 782 P.2d 552 (1989). The State failed to comply with the requirement in this case. The corrected amended information charged petitioner with aggravated first degree murder, first degree premeditated murder, first degree kidnapping, and second degree assault. Petitioner was convicted of felony murder, which was not expressly charged and which is not properly treated as an included offense within aggravated first degree murder. *Irizarry*, 111 Wn.2d at 592. Petitioner now bears the burden of showing by a preponderance of the evidence that this error caused him actual and substantial prejudice.

■ The petitioner's burden to establish actual and substantial prejudice may be waived where the error gives rise to a conclusive presumption of prejudice. *In re Richardson*, 100 Wn.2d 669, 679, 675 P.2d 209 (1983). In dicta, we have previously suggested constitutional errors which can never be considered harmless on direct appeal will also be presumed prejudicial for the purposes of personal restraint petitions. *In re Boone*, 103 Wn.2d 224, 233, 691 P.2d 964 (1984). We now reject this proposition.

■■ A personal restraint petition is not to operate as a substitute for a direct appeal. *In re Hagler*, 97 Wn.2d 818,

824, 650 P.2d 1103 (1982). We have limited the availability of collateral relief because it undermines the principles of finality of litigation, degrades the prominence of trial, and sometimes deprives society of the right to punish admitted offenders. *Hagler*, 97 Wn.2d at 824. Therefore, we decline to adopt any rule which would categorically equate per se prejudice on collateral review with per se prejudice on direct review. Although some errors which result in per se prejudice on direct review will also be per se prejudicial on collateral attack, the interests of finality of litigation demand that a higher standard be satisfied in a collateral proceeding. We do not find errors in the charging document to be per se prejudicial under the higher standard for collateral review.

As interpreted by this court, the state and federal constitutions guarantee criminal defendants the right "to be apprised with reasonable certainty of the nature of charges against that person in order to prepare an adequate defense." *State v. Elliott*, 114 Wn.2d 6, 13, 785 P.2d 440 (1990). The essential purpose of this guaranty is to provide notice. In *State v. Bailey*, 114 Wn.2d 340, 787 P.2d 1378 (1990), we dealt with a statutory rape charging document which was technically defective because it failed to notify the defendant of the nonmarriage element of indecent liberties. We rejected the defendant's challenge to his conviction for indecent liberties. We concluded "the defendant had ample notice of the possibility that he could be convicted of indecent liberties and ample opportunity to fully defend himself against that charge." *Bailey*, 114 Wn.2d at 348. Our decision in *Bailey* demonstrates that even a technically defective charging document may provide some degree of notice. Therefore, we conclude a defective charging document does not establish per se prejudice on collateral review.

In the absence of per se prejudice, petitioner must show the error worked to his actual and substantial prejudice in order to prevail. Petitioner's burden here is to establish the charging document failed to notify him he might be con-

victed of felony murder and that the failure to so inform him prejudiced him in the preparation of his defense. The count charging petitioner with aggravated first degree murder relied solely on the following aggravating factors:

> [C]ommitted the murder to conceal the commission of the crimes of Assault in the Second Degree and/or Kidnapping in the First Degree or to protect or conceal the identity of any person or persons committing the crimes of Assault in the Second Degree and/or Kidnapping in the First Degree, or that the murder was committed in the course of, in furtherance of, or in immediate flight from the crime of Kidnapping in the First Degree . . ..

Corrected amended information, at 2. Although commission of a felony may not technically be a necessary element of aggravated first degree murder, the charging document put petitioner on notice the aggravating circumstance in this case was the commission of a felony. Moreover, prior to our decision in *Irizarry*, Washington courts routinely instructed juries that the crime of aggravated first degree murder included the lesser offense of felony murder. *See Irizarry*, 111 Wn.2d at 599 (Callow, J., concurring in part, dissenting in part). Therefore, we cannot say petitioner lacked notice he might be convicted of felony murder. Furthermore, petitioner has not established that he was prejudiced in any way in the preparation of his defense by the defective charging document. Therefore, we hold petitioner is not entitled to collateral relief because he has failed to establish actual and substantial prejudice.

To summarize:

1. A new rule will be applied to all cases not yet final when the rule is announced, but will be applied to cases already final only where one of two narrow exceptions is satisfied.

2. Finality for the purposes of retroactivity analysis is determined by the case as a whole, not individual issues.

3. An error which is per se prejudicial on direct review is not necessarily per se prejudicial on collateral review.

4. Defects in charging documents do not establish per se prejudice on collateral review.

5. If per se prejudice is not present, the petitioner must establish actual and substantial prejudice. No actual and substantial prejudice has been shown here.

Finally, petitioner's brief also raises the issue of effective assistance of counsel for the first time. However, petitioner failed to raise this claim in either his personal restraint petition or his petition for discretionary review. Furthermore, in the order granting motion for discretionary review, this court limited review to the retroactive application of *Irizarry* and any resulting prejudice. Therefore, petitioner's claim based on ineffective assistance of counsel is not properly within the scope of review here. RAP 13.7(b).

The Court of Appeals' order dismissing St. Pierre's personal restraint petition is affirmed.

BRACHTENBACH, ANDERSEN, SMITH, and GUY, JJ., concur.

DURHAM, J. (concurring) — I would affirm the dismissal of the personal restraint petition for the reasons stated by Justice Callow in his concurrence/dissent in *State v. Irizarry*, 111 Wn.2d 591, 763 P.2d 432 (1988).

DORE, C.J. (dissenting) — I dissent. I object to the majority's dismissal of St. Pierre's personal restraint petition, claiming that St. Pierre failed to show "actual and substantial prejudice", which is required in a collateral attack on his conviction. I believe St. Pierre's due process rights have been violated and that a new trial is in order.

St. Pierre was convicted of first degree felony murder, first degree kidnapping and second degree assault in connection with the deaths of Damon Wells and John Achord. St. Pierre was never *charged* with felony murder. However, the jury was given an *instruction* on felony murder as a lesser included offense of aggravated first degree murder. St. Pierre was sentenced to life in prison, 20 years, and 10 years on each conviction, respectively, to run concurrently.

The majority correctly states that St. Pierre's case was not yet final when this court issued *State v. Irizarry*, 111 Wn.2d 591, 763 P.2d 432 (1988). St. Pierre's case was still "in the pipeline". "[C]ases in the pipeline when a new constitutional rule is announced must be given the benefit of that rule." *Michigan v. Payne*, 412 U.S. 47, 59-60, 36 L. Ed. 2d 736, 93 S. Ct. 1966 (1973) (Marshall, J., dissenting).

*Irizarry* held that felony murder is *not* a lesser included offense of aggravated first degree murder. The trial court's instruction treating felony murder as a lesser included offense was prejudicial error requiring a new trial. *See Irizarry*, 111 Wn.2d at 592.

In order for St. Pierre to gain the benefit of *Irizarry* in this collateral attack, I find that his conviction was not yet final. St. Pierre's burden in this personal restraint petition is to show by a preponderance of the evidence that the constitutional error (his conviction for felony murder as a lesser included offense of aggravated first degree murder) worked to his "actual and substantial prejudice". *In re Haverty*, 101 Wn.2d 498, 504, 681 P.2d 835 (1984). *In re Cook*, 114 Wn.2d 802, 814, 792 P.2d 506 (1990). The majority concludes that St. Pierre has not shown actual and substantial prejudice. It is from this conclusion that I dissent.

The majority analyzes St. Pierre's challenge as one of error in the charging document. This allows the conclusion that St. Pierre does not allege error of such magnitude that prejudice can be presumed: "We do not find errors in the charging document to be per se prejudicial under the higher standard for collateral review." Majority opinion, at 329. Not only does the majority fail to set out that "higher standard for collateral review", but it also fails to recognize the issue here concerns error in the *jury instructions* — not error in the charging document.

Assume, for the sake of argument, that St. Pierre challenged a charging document error. The majority concludes that St. Pierre had notice that he had to defend

against felony murder, thus he was not prejudiced. It relies, in part, on a faulty assessment that courts "routinely" instructed juries that felony murder was a lesser included offense of aggravated first degree murder. *See Irizarry*, at 599 (Callow, J., concurring in part, dissenting in part).[1] Disregarding that this is hardly more than an assumption, the majority's reliance on it misses the point. The question of prejudice arises not because St. Pierre should have known he would have to defend against felony murder. The prejudice is that the jury convicted him based on an improper instruction that was constitutional error. As defense counsel aptly put it:

> The trial court essentially allowed the state to amend the charge, not only after the presentation of the state's case-in-chief, but also after presentation of the defendant's case.

Brief of Petitioner, at 30.

Fundamental fairness in criminal proceedings, the touchstone of due process, begins with an accused's right to know the charge against him. *In re Hews*, 99 Wn.2d 80, 87, 660 P.2d 263 (1983). *Cf. State v. Pelkey*, 109 Wn.2d 484, 490, 745 P.2d 854 (1987); *State v. Austin*, 105 Wn.2d 511, 517, 716 P.2d 875 (1986). Together with that, the accused has a right to know that he will not be punished more severely than the law allows. *Cf. In re Moore*, 116 Wn.2d 30, 803 P.2d 300 (1991). Here, as counsel for St. Pierre effectively argue, but for the wrong instruction, jurors who decided not to convict St. Pierre of aggravated first degree murder would have had two remaining choices: acquit him or convict him of second degree murder, the lesser included offense that carried a

---

[1]In citing Justice Callow's concurring/dissenting opinion, the majority states: "prior to our decision in *Irizarry*, Washington courts routinely instructed juries that the crime of aggravated first degree murder included the lesser offense of felony murder." Majority opinion, at 330. But in his concurrence and dissent to *Irizarry* he wrote more specifically: "Washington courts have *in a number of cases* involving aggravated first degree murder routinely instructed juries that the crime of aggravated first degree murder necessarily includes the lesser crime of first degree murder." (Italics mine.) *Irizarry*, at 599 (Callow, J., concurring in part, dissenting in part). The added emphasis qualifies the majority's conclusion that such instructions were routine.

maximum prison term of 25 years. RCW 9A.32.050(2), .20.020(1)(a). Instead, St. Pierre was convicted of first degree felony murder, and sentenced to life in prison for that offense. What stronger showing of prejudice is there?

The challenge St. Pierre raises is not to a simple, harmless error. He was convicted of a crime for which he was never charged and, if the trial court had properly framed the instructions, one that the jury would not have considered. St. Pierre's conviction violated Const. art. 1, § 22 (amend. 10), as well as the Sixth and Fourteenth Amendments. *See In re Hews, supra.*

CONCLUSION

St. Pierre is entitled to the retroactive application of *Irizarry* because he was still "in the pipeline" when *Irizarry* was filed. *Michigan v. Payne, supra.* Under the *Irizarry* rule, felony murder is not a lesser included offense of aggravated first degree murder. St. Pierre *is* able to show actual prejudice in order to gain relief in this personal restraint petition.

St. Pierre's due process rights were actually prejudiced when the trial court judge instructed the jury on felony murder as a lesser included offense of aggravated first degree murder. He was actually prejudiced when he was convicted for felony murder, a charge which was not properly before the jury. St. Pierre was further prejudiced when he received a life sentence for that felony murder conviction.

St. Pierre's conviction for first degree felony murder was prejudicial error requiring a new trial. I would reverse and remand for trial.

UTTER and JOHNSON, JJ., concur with DORE, C.J.

Reconsideration denied March 17, 1992.