[No. 30629-4-I.    Division One.    August 22, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. DERALD E. ATKINSON, *Appellant.*

*Constance Marie Krontz* of *Washington Appellate Defender Association*, for appellant.

*Seth R. Dawson, Prosecuting Attorney*, and *David F. Thiele, Deputy*, for respondent.

Scholfield, J. — Derald E. Atkinson appeals his convictions for one count of delivery of cocaine, in violation of RCW 69.50.401(a), and one count of possession of marijuana, in violation of RCW 69.50.401(e). He argues that the trial court's admission of certain hearsay statements was error and violated his state and federal constitutional rights to confront the witnesses against him. We affirm.

## FACTS

On January 24, 1991, Carl Washington was arrested for second degree theft. Washington told Detective Paul Watkins of the Lynnwood Police Department that he wished to exchange narcotics information for leniency on the theft charge.

After agreeing to this exchange, Detective Watkins dialed a pager number provided by Washington. The volume of the telephone was turned up and the receiver tipped so that Watkins could hear the conversation between Washington and an unidentified woman. The woman asked how much Washington wanted and he replied "one eighth of an ounce". The woman said she would tell "Derald" and have him call back.

Six minutes later, a man identifying himself as Derald phoned. Derald was later identified as the Appellant Atkinson. Again the volume was turned up and the receiver tipped so that Watkins could hear the conversation between Atkinson and Washington.

Atkinson and Washington agreed to meet at Scott's Bar & Grill at 12:45 a.m. that night. Atkinson would sell one-eighth of an ounce (of cocaine) for $400. He said that he would be driving a gold Cadillac. Watkins took the phone from Washington and gave Atkinson directions to the restaurant.[1]

Surveillance was arranged in the area of the restaurant. Detective Watkins strip-searched Washington, verifying that he had no money and no drugs. He was given street clothes.

---

[1]The trial court's ruling that the phone call from Atkinson had been authenticated is not challenged on appeal.

Watkins and Washington then drove to the restaurant in an undercover car, arriving at 12:53 a.m. A gold Cadillac was parked in the restaurant lot facing east. It was backed up to, and about 5 feet away from, a planting strip. A man sat behind the wheel, and a woman sat in the passenger's seat. Watkins parked 60 feet away from the Cadillac, facing west.

Watkins gave Washington $100 of the $400 buy money. Washington walked to the Cadillac and got in. A short time later he returned to Watkins' car and told Watkins that Atkinson said he had the amount of cocaine ordered, but would not sell any unless he was given the entire $400.

Watkins gave Washington the remaining $300, which, along with the initial $100, had been photocopied to make a record of the serial numbers. Washington returned to the Cadillac, sat inside for about 2 minutes, then got out. He walked to the planter strip about 5 feet from the Cadillac and began looking at the ground near the base of a tree. At the same time, the Cadillac began moving south through the lot.

When Watkins asked him what he was doing, Washington said he had given the money to Atkinson and was told that the cocaine was in a paper sack near the base of the tree.

Watkins signaled the arrest team, and Atkinson and the woman with him were arrested. Washington and Watkins were taken into custody to preserve their cover. Detective Giddens located a paper sack 10 feet from where Washington had been looking. The paper sack had a plastic baggie inside which contained a white rock substance, later determined to be cocaine. The $400 Watkins had given to Washington was found between the front seats of the Cadillac.

The police found a pager attached to the Cadillac's sun visor. That pager's number was the same number the police had called earlier. The police monitored the pager for a few days and returned the pages received. The callers wanted to speak to Atkinson to obtain cocaine.

Atkinson was charged by second amended information with one count of delivery of cocaine, in violation of RCW

69.50.401(a), and one count of possession of marijuana, in violation of RCW 69.50.401(e).

At a pretrial hearing, the court ruled that the out-of-court statements made by Washington to Watkins were admissible as coconspirator statements made in furtherance of a conspiracy. The defense opposed the admission of Washington's hearsay statements, and at trial the court allowed the defense a continuing objection.

A no-bail material witness warrant was issued for Washington and was outstanding for 2 months. The bench trial proceeded without him.

At trial, the court permitted the defense to maintain objections to all testimony regarding statements made between Watkins, Washington, the unidentified woman, and Atkinson. Watkins testified that he had had an unobstructed view of the Cadillac at the scene, and there had been enough light in the parking lot to allow him to see the occupants of the car. He testified that when Washington was in the Cadillac, he appeared to be talking with the occupants.

The trial court found Atkinson guilty as charged.

This appeal timely followed.

### Admissibility of Washington's Hearsay Statements

Atkinson contends that the trial court's admission of Washington's hearsay statements was error because the statements were made while he was cooperating with the police and, therefore, were not in furtherance of a conspiracy.

The trial court admitted Washington's statements under ER 801(d)(2)(v), the coconspirator exemption[2] from the hearsay rule which provides as follows:

> A statement is not hearsay if —
>
> . . . .
>
> . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

---

[2]*State v. Palomo*, 113 Wn.2d 789, 797, 783 P.2d 575 (1989) (coconspirator statements constitute an exemption, as opposed to an exception, from the hearsay rule), *cert. denied*, 498 U.S. 826 (1990).

■ Before admitting the statement of a coconspirator under ER 801(d)(2)(v), the trial court must first determine whether the State has shown with substantial independent evidence a prima facie case of conspiracy. *State v. St. Pierre*, 111 Wn.2d 105, 118, 759 P.2d 383 (1988). The trial court must also find that the statements were made during the course and in furtherance of the conspiracy. *St. Pierre*, at 118-19. The fact that some members of the conspiracy may be police agents does not preclude a finding that a conspiracy exists. *State v. Valladares*, 31 Wn. App. 63, 74-75, 639 P.2d 813 (1982), *rev'd in part on other grounds*, 99 Wn.2d 663, 664 P.2d 508 (1983). However, statements made with the purpose of assisting the police, and not in furtherance of the conspiracy, are not admissible under the coconspirator exemption. *United States v. Alonzo*, 991 F.2d 1422, 1426 (8th Cir. 1993); ER 801(d)(2)(v).

In *Alonzo*, the defendants, Jesus and Gilberto Alonzo, appealed their convictions for conspiring to possess cocaine with intent to distribute. They contended that the District Court erred in admitting out-of-court statements made by a coconspirator, Martinez, while cooperating with the police after his arrest. Among those statements was a statement that his source of cocaine was the defendant, Jesus Alonzo. On appeal, the court held that Martinez' station-house statements identifying his cocaine source were not intended to further a successful conspiracy and were therefore inadmissible against the Alonzos. The court added that inadmissibility was further supported by the fact that the declarant made the statements to a person whom he knew to be a police agent. *Alonzo*, at 1426.

Here, no conspiracy was being furthered between Washington and Atkinson. The scheme was between Washington and the police officers to effect an arrest of Atkinson. Furthermore, because he was cooperating with the police, Washington's statements were not made during the course and in furtherance of a conspiracy. Rather, the statements were made during the course of assisting the police in arresting Atkinson. Any such statements would have been made in

opposition to a conspiracy rather than in furtherance of one because the purpose of the conversation was to develop a case against the declarant. Accordingly, the hearsay statements were not properly admitted under the coconspirator exemption.

■ The State suggests we affirm on the alternative theory[3] that the hearsay was admissible as a present sense impression under ER 803(a)(1).[4] We doubt whether the present sense impression exception is the proper vehicle for admission of Atkinson's statements to Washington. Furthermore, we need not address this issue because we choose to decide the case on the ground that Detective Watkins' testimony carried a clear implication of the contents of Atkinson's statements to Washington. Therefore, if the admission of statements made by Washington to Watkins was error, it was harmless error.

Watkins' testimony indicates that his personal observations were sufficient to sustain Atkinson's conviction. Watkins' testimony also indicates that Washington accurately reported Atkinson's statements. First, Detective Watkins had personal knowledge of the use of the pager number and that a man identifying himself as "Derald" called and spoke to Washington. The volume was turned up, and the phone was tipped in Watkins' direction so he could hear the conversation. Atkinson said he would meet Washington at Scott's Bar & Grill and that he would be driving a gold Cadillac. Atkinson also said he would bring the product to sell, and they agreed upon a price of $400. Watkins then saw Atkinson enter the gold Cadillac at the place and time agreed to during the telephone conversation. He observed that the Cadillac was in a position where an occupant of the car could have dropped the cocaine where it was ultimately discovered. Watkins saw Washington get into the Cadillac and

---

[3]This court may affirm on an alternative theory of admissibility not raised in the trial court. *St. Pierre*, 111 Wn.2d at 119.

[4]Under ER 803(a)(1), a present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."

talk with Atkinson, and afterward Washington returned to his car and said that he needed the entire $400.

After the arrest, Watkins found $400 between the seats of the Cadillac which had been driven by Atkinson. From Watkins' testimony it is obvious that when Washington first talked to Atkinson, he demanded the full $400. It is also obvious that Atkinson told Washington where the cocaine was because, after leaving the Cadillac, Washington went directly to the specific area near the tree where an officer subsequently located the bag of cocaine. Under these circumstances, even if Atkinson's statements were admitted in error through Detective Watkins' testimony, the error was harmless because Watkins' testimony was based on his own observations and personal knowledge, and it included sufficient facts to sustain Atkinson's conviction. Furthermore, Detective Watkins' observations are consistent with the information Washington relayed to him about Atkinson's statements.

### Confrontation Clause Violation

Atkinson's claim that admission of the hearsay statements violated his state and federal constitutional rights to confront the witnesses against him must similarly fail because any error in admitting them was harmless.

Courts apply the overwhelming untainted evidence test to analyze a confrontation clause error.

> Under the "overwhelming untainted evidence" test, the appellate court looks only at the untainted evidence to determine if the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt. . . . The "overwhelming untainted evidence" test allows the appellate court to avoid reversal on merely technical or academic grounds while insuring that a conviction will be reversed where there is any reasonable possibility that the use of inadmissible evidence was necessary to reach a guilty verdict.

*State v. Hieb*, 107 Wn.2d 97, 110, 727 P.2d 239 (1986) (quoting *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986)). In making our determination, we must review the entire record after first eliminat-

ing the tainted evidence which is the inadmissible hearsay testimony. *Hieb*, at 110.

Here, the remaining untainted evidence is overwhelming. Washington made a call to a pager number and left a message with a woman stating that he wanted "one eighth of an ounce". Atkinson returned the call, stating his name was Derald. He agreed to meet Washington at 12:45 a.m., at which time Atkinson would sell one-eighth of an ounce to Washington for $400. He said he would be driving a gold Cadillac. When Washington and Watkins arrived at the designated place, Atkinson was already waiting in a gold Cadillac with a female passenger. Watkins gave Washington $400. Washington went to the Cadillac, stayed 2 minutes and got out. He walked to the planter strip and began looking at the ground near the base of a tree. The gold Cadillac began to leave. Atkinson and the woman were arrested. Later Detective Giddens located a paper sack 10 feet from where Washington had been looking, in a location consistent with it having been placed there from Atkinson's car by his female accomplice. The paper sack contained rock cocaine. The $400 was recovered from Atkinson's car. A pager was found on the sun visor. That pager's number was the same number the police used to establish contact with Atkinson. The police monitored the pager and returned the pages received. The callers wanted to speak to Atkinson to obtain cocaine.

We conclude that overwhelming evidence necessarily leads to a finding of guilt and indicates that any error was harmless.

The judgment and sentence are affirmed.

GROSSE and BECKER, JJ., concur.