[No. 23586-6-III.   Division Three.   October 24, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSE SANCHEZ-GUILLEN, *Appellant*.

---

[7] *Luckett*, 98 Wn. App. at 312.

638

*Bevan J. Maxey*, for appellant.

*Gary A. Riesen*, *Prosecuting Attorney*, for respondent.

¶1 SWEENEY, C.J. — This appeal follows a conviction for aggravated first degree murder. The appellant assigns error to a number of the court's evidentiary rulings and challenges the sufficiency of the evidence to prove the premeditation necessary for aggravated first degree murder. We hold that the evidentiary rulings were correct and the evidence was sufficient. We therefore affirm the conviction.

## FACTS

¶2 Chelan County Sheriff's Deputy Saul Gallegos followed a car driven by Jose Sanchez-Guillen. He suspected that Mr. Sanchez-Guillen was driving with a suspended license and had outstanding traffic citations. Mr. Sanchez-Guillen tried to elude the officer by pulling into the yard of Roberto Venegas Olivares. Mr. Venegas Olivares was the uncle of Mr. Sanchez-Guillen's passenger, Brenda Angulo. Mr. Sanchez-Guillen parked and entered the Venegas Olivares trailer home.

¶3 Deputy Gallegos pulled in with his emergency lights flashing and parked behind Mr. Sanchez-Guillen's car. Mr. Venegas Olivares arrived at the same time with his wife, son, and daughter Maria. He gave Deputy Gallegos permission to enter and search his mobile home. The Venegas Olivares family followed Deputy Gallegos inside. He did not find Mr. Sanchez-Guillen, so Deputy Gallegos searched outside. The children followed him out.

¶4 Maria saw Mr. Sanchez-Guillen and Deputy Gallegos wrestle and grab each other. She did not see a gun. She ran into the trailer to ask her father to help. Two shots rang out. A neighbor also saw the men fighting. She saw one man being pulled down by the neck by another. She heard shots. Then the first man fell to the ground.

¶5 After the shooting, Mr. Sanchez-Guillen returned to the trailer. He was shoving Deputy Gallegos's gun into his pants. He looked scared. He then moved the deputy's car from behind his and drove away very fast. Deputy Gallegos died at the scene from a single round fired from his own gun. The bullet struck him between the eyes.

¶6 Later that evening, Mr. Sanchez-Guillen and his mother, Maria Belen-Guillen, visited Concepciòn Hernandez Refugio, a family friend, in Warden, Washington. Mr. Sanchez-Guillen asked him for help getting to Pasco. Ms. Belen-Guillen told Mr. Hernandez Refugio that her son shot Deputy Gallegos. Mr. Sanchez-Guillen ultimately wanted to get to Mexico.

Ms. Belen-Guillen was later convicted of rendering criminal assistance and deported.

¶7 Police arrested Mr. Sanchez-Guillen three days later in Connell. They read him his *Miranda*[1] rights and transported him by car to Wenatchee. On the way, he volunteered a 20-30 minute narrative statement to United States Deputy Marshal Henry Pineda.

¶8 The State charged Mr. Sanchez-Guillen with first degree aggravated murder. The case was tried to a jury. An issue at the trial was whether the State could introduce Ms. Belen-Guillen's statement to Mr. Hernandez Refugio that Mr. Sanchez-Guillen shot Deputy Gallegos. The court ruled Ms. Belen-Guillen's statements could come in as indirect admissions under the coconspirator exception, ER 801(d)(2)(v).[2] The defense objected that the State could not invoke the coconspirator exemption unless it notified the defense of its intent to allege conspiracy.

¶9 The parties eventually agreed to admit Ms. Belen-Guillen's statements by allowing the prosecutor to read to the jury a written report by a nontestifying police officer who had interviewed Mr. Hernandez Refugio during the investigation.

¶10 Mr. Sanchez-Guillen also moved to suppress his own statements to Marshal Pineda. The court concluded that the statements were voluntary and therefore admissible. But the State did not introduce them. Mr. Sanchez-Guillen's theory of the case was that the shooting was an accident. He did not testify but tried to introduce his statements to Marshal Pineda to support this defense. The court refused the offer.

¶11 The jury found Mr. Sanchez-Guillen guilty of aggravated first degree murder.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] A statement is not hearsay if it is "offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." ER 801(d)(2)(v).

## DISCUSSION

ADMISSIBILITY OF MARIA BELEN-GUILLEN'S STATEMENTS TO CONCEPCIÒN HERNANDEZ REFUGIO

¶12 Ms. Belen-Guillen told Mr. Hernandez Refugio that Mr. Sanchez-Guillen was involved in a police shooting. The prosecutor argued, and the court agreed, that Ms. Belen-Guillen approached Mr. Hernandez Refugio in furtherance of a conspiracy between her and Mr. Sanchez-Guillen to render criminal assistance by spiriting Mr. Sanchez-Guillen out of the country. The State contends her statements were made by a coconspirator in furtherance of the conspiracy and were not, therefore, hearsay. ER 801(d)(2)(v).

¶13 Mr. Sanchez-Guillen argued that the State could not invoke the coconspirator exemption because it had not notified him of its intent to claim conspiracy. And this deprived him of the opportunity to confront the absent declarant in a deposition. The prosecutor then proposed to read to the jury a pretrial investigative report by Sergeant Jeff Middleton. This included interrogation questions and Marshal Pineda's translation of Mr. Hernandez Refugio's unsworn responses. Defense counsel agreed. The prosecutor then related to the jury what Sergeant Middleton said Marshal Pineda said Mr. Hernandez Refugio said Ms. Belen-Guillen said to him after talking to Mr. Sanchez-Guillen.

¶14 Mr. Sanchez-Guillen challenges the admissibility of Ms. Belen-Guillen's statements to Mr. Hernandez Refugio. He assigns error based on five grounds.

¶15 (1) Mr. Sanchez-Guillen first contends that the only conspiracy proved by the State was between his mother and Mr. Hernandez Refugio. He contends that the State needed to prove that Mr. Sanchez-Guillen himself asked Mr. Hernandez Refugio for transportation. Said another way, it had to prove that he was part of the conspiracy.

¶16 (2) Mr. Sanchez-Guillen contends that the recipient of a coconspirator's statement must be part of the con-

spiracy at the time the statement is made. He contends that ER 801(d)(2)(v) does not apply because the State did not show that Mr. Hernandez Refugio was part of a conspiracy when Ms. Belen-Guillen made statements to him.

¶17 (3) Mr. Sanchez-Guillen contends that the State failed to show that Ms. Belen-Guillen's statements were made in furtherance of the conspiracy, if there was a conspiracy. He relies primarily on *United States v. Eubanks* for the proposition that admissions by a conspirator that are not made in furtherance of the conspiracy fall outside the rule. *United States v. Eubanks*, 591 F.2d 513, 520 (9th Cir. 1979).

¶18 (4) Mr. Sanchez-Guillen contends that the State must give pretrial notice to the defense if it intends to invoke the coconspirator statement exception to the hearsay rule. For this he relies on *State v. Baruso*.[3]

¶19 (5) And finally, Mr. Sanchez-Guillen contends that the admission of his mother's statements to Mr. Hernandez Refugio violated his Sixth Amendment right to confrontation. *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

■ ■ ¶20 The court's interpretation of the rules of evidence is a question of law that we review de novo. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003) (ER 404(b)). We review the court's application of the rules to particular facts for abuse of discretion. *Id.*

■ ¶21 Statements made by a coconspirator in the course of and in furtherance of a conspiracy are not hearsay. ER 801(d)(2)(v); *State v. St. Pierre*, 111 Wn.2d 105, 118-19, 759 P.2d 383 (1988). But the court must first conclude that a conspiracy took place and that the defendant was part of it. *State v. Guloy*, 104 Wn.2d 412, 420, 705 P.2d 1182 (1985). The State must show this independently of the statements it seeks to admit. *St. Pierre*, 111 Wn.2d at 118.

■ ¶22 The conspiracy supporting the court's ruling on the evidence need not be integral to the crime charged, here,

---

[3] *State v. Baruso*, 72 Wn. App. 603, 865 P.2d 512 (1993).

aggravated first degree murder. *State v. Halley*, 77 Wn. App. 149, 152, 890 P.2d 511 (1995). It need not be a formal agreement. A " 'concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose,' " will suffice. *State v. Barnes*, 85 Wn. App. 638, 664, 932 P.2d 669 (1997) (internal quotation marks omitted) (quoting *State v. Casarez-Gastelum*, 48 Wn. App. 112, 116, 738 P.2d 303 (1987)).

¶23 Once the State shows a conspiracy, even a slight connection by the defendant is enough to support admission of the statement. *State v. Brown*, 45 Wn. App. 571, 579, 726 P.2d 60 (1986). Statements of coconspirators are admissible as substantive evidence. *Barnes*, 85 Wn. App. at 665.

■ ¶24 The record here shows that two or more persons, including Mr. Sanchez-Guillen's mother, conspired to bring about his flight from justice. Mr. Sanchez-Guillen was with Ms. Belen-Guillen when she solicited Mr. Hernandez Refugio's help. The plan could not succeed without Mr. Sanchez-Guillen's participation. He traveled to Warden, Pasco, and Connell, all in furtherance of a plan to leave the country.

■ ¶25 The State did not have to show that Mr. Hernandez Refugio was a member of the conspiracy. The statement must be made *by* a coconspirator, not *to* a coconspirator. ER 801(d)(2)(v). The State need show only that the declarant, here Ms. Belen-Guillen, and Mr. Sanchez-Guillen were members of the conspiracy and the statement to a third party furthered the conspiracy. *State v. Dictado*, 102 Wn.2d 277, 283-84, 687 P.2d 172 (1984); 5B KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 801.61, at 389 (4th ed. 1999). And this is what we have here.

¶26 Mr. Sanchez-Guillen abbreviates the holdings of several federal cases and then asserts the blanket proposition that confessions or admissions of coconspirators that are not statements "in furtherance" of the conspiracy are not exempt from the hearsay rule. *See, e.g., United States v. Fielding*, 645 F.2d 719, 726-27 (9th Cir. 1981) (citing

*Eubanks*, 591 F.2d at 520). The cases Mr. Sanchez-Guillen cites paraphrase a holding of *Fiswick v. United States*.[4] That case holds that the confession of one coconspirator after his arrest is not admissible against his erstwhile fellow conspirators. *Fiswick*, 329 U.S. at 217. But here, Ms. Belen-Guillen's statement was not a postarrest confession. She spoke to Mr. Hernandez Refugio in furtherance of the plan to keep her son from being arrested. The furtherance element is, then, satisfied.

¶27 The State is not required to give pretrial notice every time it asserts conspiracy (ER 801(d)(2)(v)) as the basis for introducing an out-of-court statement. There is no need for notice here because the conspiracy underlying admission of the statements is incidental (not integral) to the crime charged. *State v. Baruso*, 72 Wn. App. 603, 613, 865 P.2d 512 (1993); *Dictado*, 102 Wn.2d at 285. This distinguishes the cases Mr. Sanchez-Guillen cites on this point. In *Dictado*, for example, the alleged conspiracy constituted a common scheme or plan that provided a nexus between a series of killings and established the aggravating factor. A defendant "has a due process right to know the charge he must defend against at trial; he cannot be tried for an unstated offense." *Dictado*, 102 Wn.2d at 284-85. This is not an issue here. The escape plan was not part of the State's required proof to convict Mr. Sanchez-Guillen. No notice was required.

¶28 Finally, the trial court considered the possible implications of *Crawford*.[5] We review alleged violations of the confrontation clause de novo. *State v. Larry*, 108 Wn. App. 894, 901, 34 P.3d 241 (2001).

¶29 The court correctly concluded that *Crawford* did not apply to Ms. Belen-Guillen's statements to Mr. Hernandez Refugio. Statements in furtherance of a conspiracy are not testimonial, and their admission does not,

---

[4] *Fiswick v. United States*, 329 U.S. 211, 67 S. Ct. 224, 91 L. Ed. 196 (1946).

[5] *Crawford*, 541 U.S. 36.

therefore, implicate the Sixth Amendment. *Crawford*, 541 U.S. at 56.

¶30 Mr. Sanchez-Guillen also contends that his mother's statements to Mr. Hernandez Refugio were hearsay within hearsay and, therefore, inadmissible. But hearsay within hearsay is not excluded, so long as each level of hearsay conforms to an exception to the rule. ER 805. The second level of hearsay here is Mr. Sanchez-Guillen's own statements to his mother. They are not hearsay under ER 801(d)(2)(i) (admissions of a party).

¶31 The statements were admissible.

Mr. Sanchez-Guillen's Prior Statements to Marshal Pineda

¶32 The court denied Mr. Sanchez-Guillen's motion to suppress his statement to Marshal Pineda. Mr. Sanchez-Guillen wanted to introduce part of that statement during the trial to show his state of mind at the time of the shooting and thereby bolster his defense of accident. He assigns error to the court's refusal to allow this. The court's ruling was correct.

¶33 Mr. Sanchez-Guillen argues that the court had already ruled that his postarrest statements were admissible. But the court ruled they were admissible for all "proper purposes." Clerk's Papers at 133. Whether a purpose is "proper" depends on who is offering the evidence and why. Mr. Sanchez-Guillen's statements are nonhearsay admissions of a party opponent when offered against him by the State, ER 801(d)(2)(i), and therefore, admissible. But the party's own out-of-court statement offered by the party itself is hearsay when offered for the truth of the matter asserted. ER 801(d)(2); *State v. King*, 71 Wn.2d 573, 577, 429 P.2d 914 (1967).

¶34 And trial counsel apparently understood this. He asked the court to admit Mr. Sanchez-Guillen's statements to Marshal Pineda under the hearsay exception for statements (1) against penal interest under ER 804(b)(3) and (2) to show the declarant's then-existing state of mind, ER 803(a)(3). But neither of these exceptions applies.

■ ¶35 A statement against interest is admissible under this hearsay exception if the declarant is unavailable. ER 804(b)(3). But a declarant is not "unavailable" for hearsay purposes if the proponent of the evidence (here, Mr. Sanchez-Guillen) has asserted a privilege to keep the declarant (Mr. Sanchez-Guillen again) from testifying. ER 804(a)(6). Mr. Sanchez-Guillen is both the proponent and the declarant. He was unavailable to testify solely because he exercised his constitutional privilege against self-incrimination. That does not satisfy the prerequisites for admission.

■ ¶36 Statements admitted under the exception for expressions of the declarant's then-existing state of mind are admissible without regard to the declarant's availability. ER 803(a)(3). However, "then" in the term "then-existing" refers to the time the statement was made, not the earlier time the statement describes. *State v. Ammlung*, 31 Wn. App. 696, 703, 644 P.2d 717 (1982). Mr. Sanchez-Guillen offered his later statements to Marshal Pineda to prove his state of mind on the night of the crime. (His statements were apparently consistent with an accidental shooting.) But his state of mind at the time of his arrest was not at issue.

¶37 *State v. Parr*, cited by Mr. Sanchez-Guillen, is not helpful. *State v. Parr*, 93 Wn.2d 95, 606 P.2d 263 (1980). It concerns the relevance of state-of-mind statements made by victims of crimes when offered to prove the defendant's intent.

¶38 Mr. Sanchez-Guillen's out-of-court statements were inadmissible hearsay when offered by the defense.

¶39 We affirm the verdict.

¶40 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040.

KATO and KULIK, JJ., concur.