# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 54640-0-II |
| MARTIN ARTHUR JONES, | UNPUBLISHED OPINION |
| Petitioner. | |

MAXA, J. – Martin Jones appeals the superior court's denial of his personal restraint petition (PRP) following an evidentiary hearing ordered by this court.

In 2011, a jury found Jones guilty of first degree attempted murder for the shooting of a Washington State Patrol trooper. Subsequently, Jones's investigator procured statements from a man who claimed that his brother admitted to shooting the trooper. After his direct appeal was final, Jones filed a timely PRP, alleging that his restraint was unlawful under RAP 16.4(c)(3) based on newly discovered evidence. This court transferred his PRP to the superior court under RAP 16.11(b) for an evidentiary hearing and a determination on the merits. After an evidentiary hearing, the superior court denied Jones's PRP.

Jones argues that the superior court erred in concluding that the statements identifying another potential suspect were inadmissible hearsay and therefore did not support granting relief to Jones under RAP 16.4(c)(3). He also claims that if the statements did constitute hearsay, excluding them violated his constitutional right to present a defense.

We hold that the superior court did not err in making its hearsay ruling and in ruling that Jones's offered evidence did not meet the test for newly discovered evidence under RAP 16.4(c)(3). In addition, we reject Jones's right to present a defense claim. Accordingly, we affirm the denial of Jones's PRP.

FACTS

*Background*

In 2010, Washington State Patrol trooper Jessee Greene pulled over a minivan driven by Jones's wife, Susan Jones, for speeding. Greene believed Susan[1] was intoxicated. Washington State Patrol trooper Scott Johnson arrived as backup. Greene arrested Susan for driving under the influence. Shortly after being placed into custody, Susan texted Jones and informed him of her arrest.

Greene transported Susan to jail while Johnson stayed with the minivan. George Hill, owner of Hill Auto Body & Towing, arrived on the scene. Hill and Johnson were standing near the van when a person approached. This person was visibly agitated and spoke to Hill, asking him what he was doing. Hill stated that he was preparing the vehicle for towing. As the person began walking away, Johnson asked if he needed help with anything. The person responded that he did not need help and continued walking away.

A person later grabbed Johnson from behind and shot him in the back of the head. Johnson, still conscious, made eye contact with the man who had shot him and returned fire. Hill also gave chase, but the man fired at him. Johnson watched the shooter flee.

---

[1] Other than the appellant, we refer to individuals with the same last name by their first names to avoid confusion. We intend no disrespect.

At the scene, investigating officers found one .22 shell casing where Johnson had been shot. A K–9 dog tracked a scent from the shooting scene to near Jones's house. Police later arrested Jones and obtained a warrant for his house. Inside the house, officers located a box of .22 caliber ammunition that matched the .22 shell casing found at the scene of Johnson's shooting.

Johnson identified Jones as the shooter after seeing a photograph of him. Jones claimed that he was asleep at the time of the shooting, but officers were able to obtain phone records showing he was using his phone at the time he claimed to be asleep. The State charged Jones with attempted first degree murder.

*Trial and Appeal Proceedings*

In 2011, a jury found Jones guilty as charged. He appealed, arguing that his constitutional right to a public trial was violated. *State v. Jones,* 175 Wn. App. 87, 91, 303 P.3d 1084 (2013), *aff'd in part, rev'd in part,* 185 Wn.2d 412 (2016). This court agreed and ordered a new trial. *Id.* at 104. The Supreme Court accepted review, affirmed in part and reversed in part, and reinstated Jones's conviction. *State v. Jones*, 185 Wn.2d 412, 428, 372 P.3d 755 (2016).

*PRP Proceeding*

In 2017, Jones timely filed a PRP, arguing among other things that there was newly discovered evidence that pointed to another person as the perpetrator. Jones's PRP was based on two handwritten statements and one recorded statement from Peter Boer in 2014 in which he claimed that on the night of the shooting, his brother, Nicholas Boer, stated that he had shot Johnson.

This court transferred the PRP to the superior court under RAP 16.11 and 16.12 for an evidentiary hearing and a determination on the merits. Relevant to this appeal, this court

3

specifically asked the superior court to decide whether statements from Peter that his brother confessed to shooting Johnson constituted newly discovered evidence, requiring vacation of Jones's conviction and a new trial.[2]

*Evidentiary Hearing*

The superior court held an evidentiary hearing. Jones presented evidence that while investigating the shooting, police compiled a sketch of the perpetrator. Neither Hill nor Johnson believed the sketch was an accurate depiction of the suspect, but police disseminated the sketch to the public. Several citizens reported that the sketch looked like several different men, including Nicholas and Peter. Police investigated the brothers but did not believe either was the shooter. Nicholas told officers that he was at his mother's house at the time of the shooting. The State disclosed this information to Jones before his trial.

The three statements referenced in Jones's PRP were submitted to the court for consideration. These statements were procured by Greg Gilbertson, an investigator hired by the Jones family.

First, in a handwritten statement Peter signed on August 18, 2014, Peter stated that on the night of the shooting an acquaintance said that he had heard that Nicholas and Peter had shot the trooper. Peter stated that Nicholas "smiled and laughed and stated yep I shot that guy. I am the one that does all the bad shit in this town." Clerk's Papers (CP) at 2099.

---

[2] This court also directed the superior court to consider whether Jones presented newly discovered evidence regarding alleged false evidence from the State, the withholding of material exculpatory evidence, and a report from the President's Counsel of Advisors on Science and Technology on forensic science. The superior court concluded that Jones failed to demonstrate these allegations amount to newly discovered evidence, and Jones does not appeal the court's determination.

4

Second, in a handwritten statement Peter signed on August 25, 2014 Peter stated that on the night of the shooting he asked whether Nicholas had shot the trooper and Nicholas did not answer. But Peter stated that later that night Nicholas "boasted that he had shot the cop." CP at 2103. Nicholas also asked Peter to get rid of some gun pieces and parts for him, which Peter did.

Third, Peter had a long interview with Gilbertson on August 29, 2014 before a court reporter. In that interview, Peter stated that he asked Nicholas whether he really had shot the trooper. Nicholas responded, "[Y]ah, I do all the bad shit around here." CP at 2135. Nicholas then asked Peter to dump some gun parts.

However, in an October 20, 2014 letter to Gilbertson, Peter stated that Nicholas never told him that he shot the trooper and that he never saw a gun that fit the description of the weapon used in the shooting.

At the hearing, the State offered evidence that shortly after Peter gave his 2014 statements, Gilbertson had put money in Peter's prison account. Peter testified that "this dude showed up and gave me money and I made statements." Report of Proceedings (RP) (May 29, 2019) at 104.

The State also submitted a recorded interview that Peter gave to Jones's attorney Lenell Nussbaum and new investigator Winthrop Taylor on March 27, 2017, in which Peter made statements inconsistent with his prior statements made to Gilbertson. In that interview Peter said that Nicholas was joking when he allegedly admitted shooting the trooper. Finally, the State offered an April 3, 2017 letter that Peter wrote to Nussbaum, telling her that when Gilbertson visited him in 2014 Gilbertson was "not looking for the truth," and that Gilbertson "paid me money . . . and when that didn't work, he intimidated me into making statements that did not reflect actual events, but rather suited his needs." CP at 2445.

Peter testified at the hearing that he had no recollection of claiming Nicholas made statements regarding the shooting. When asked if he told the truth in 2014, Peter said "Absolutely not. I - - in those times I do remember being a stone cold addict that would do anything - - my motto was I'll do anything for 50 bucks, anything." RP (May 29, 2019) at 105. Peter also testified that he sustained a serious injury in 2004, which led to memory loss.

Peter's friend, Gregory McLeod, testified that Peter told him he overheard Nicholas claim he shot Johnson.

Nicholas also testified at the evidentiary hearing. He denied shooting Johnson or making a statement that he shot him. Nicholas also provided a DNA sample. The Washington State Patrol Crime Lab compared Nicholas's DNA to unknown human DNA obtained from Johnson's clothing and cigarette butts collected at the crime scene. Nicholas's DNA did not match the DNA found on those items.

*Superior Court's Decision on the Merits*

Following the evidentiary hearing, the superior court entered written findings of fact and conclusions of law.

Jones challenges the following findings of fact:

8. Peter Boer was high on drugs the night that Trooper Johnson was shot on February 10, 2010 and he does not have an accurate memory of that evening.
. . .

32. Peter Boer testified and disavowed statements he gave to Jones's investigators in 2014 that attributed statements to Nicholas Boer. Peter Boer testified he had no memory of making such statements, that others provided him with information regarding the night of the shooting, and that any statement he gave to Jones' investigators in 2014 were likely false.

33. The recording process employed when Peter Boer gave recorded statements to Jones' investigators in 2014 was not reliable.

6

34. Peter Boer's 2014 recorded statements to Jones' investigators were not taken by detached and neutral persons and were not taken in a detached and neutral manner.

35. The court finds an absence of indicia of reliability to establish the trustworthiness of Peter Boer's recorded statements to Jones' investigators.

36. Peter Boer's statements to Jones' investigators are not credible.

CP at 2779, 2782.

The superior court concluded that all of the out-of-court statements Peter made regarding Nicholas shooting the trooper were inadmissible hearsay. Specifically, the court ruled that (1) Peter's statements were not admissible under the hearsay exception in ER 803(a)(5) for recorded recollection; and (2) Nicholas's statements to Peter were not admissible under the hearsay exceptions in ER 804 (b)(3) for statements against interest, in ER 803(a)(3) to show Peter's state of mind, and in ER 801(d)(2)(v) for statements of a coconspirator. Because Peter's out-of-court statements were inadmissible, the court concluded that Jones failed to prove that the new evidence would have changed the result of the 2011 trial.

The superior court also concluded that Jones had failed to prove that Peter's out-of-court statements could not have been discovered before trial in the exercise of due diligence. The court pointed out that defense counsel possessed discovery identifying both Nicholas and Peter as possible suspects, and could have investigated and interviewed them at that time.

The superior court entered an order dismissing Jones's PRP. Jones appeals the court's order.

## ANALYSIS

### A. PRP PRINCIPLES

A PRP is not a substitute for a direct appeal, and the availability of collateral relief is limited. *In re Pers. Restraint of* Dove, 196 Wn. App. 148, 153, 381 P.3d 1280 (2016). For

matters outside the existing record, the petitioner must demonstrate that he has competent, admissible evidence based on more than inadmissible hearsay to establish the facts that entitle him to relief. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 18, 296 P.3d 872 (2013).

RAP 16.4(a) states that a petitioner can obtain relief only if his or her restraint is unlawful for one of the reasons stated in RAP 16.4(c). Under RAP 16.4(c)(3), a restraint is unlawful for the following reason:

> Material facts exist which have not been previously presented and heard, which in the interest of justice require vacation of the conviction, sentence, or other order entered in a criminal proceeding or civil proceeding instituted by the state or local government.

This provision applies to newly discovered evidence. *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 569, 397 P.3d 90 (2017).

When a PRP is filed with an appellate court and cannot be determined solely on the record, the appellate court may transfer the PRP to the superior court for a determination on the merits. RAP 16.11(b). RAP 16.12 provides the procedures for an evidentiary hearing in the superior court. "Upon the conclusion of the hearing if the case has been transferred for a determination on the merits, the superior court shall enter findings of fact and conclusions of law and an order deciding the petition." RAP 16.12.

Jones suggests that the rules of evidence do not apply to PRP evidentiary hearings. However, RAP 16.12 expressly states that the rules of evidence apply.

RAP 16.14(b) provides that a superior court's decision in a PRP transferred to the court for a determination on the merits will be "subject to review in the same manner and under the same procedure as any other trial court decision."

B.      RELIEF UNDER RAP 16.4(C)(3)

Jones argues that he is entitled to relief under RAP 16.4(c)(3) based on Peter's out-of-court statements regarding Nicholas's admission that he shot trooper Johnson.[3]  We disagree.

1.      Legal Principles

To prevail on a claim of newly discovered evidence under RAP 16.4(c)(3), the defendant must show evidence that " '(1) will probably change the result of the trial, (2) was discovered since the trial, (3) could not have been discovered before trial by the exercise of due diligence, (4) is material, and (5) is not merely cumulative or impeaching.' "  *Lui*, 188 Wn.2d at 569 (quoting *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 319-20, 868 P.2d 835 (1994)).

2.      Change the Result of Trial

Jones argues that Peter's statements regarding Nicholas's admission that he shot trooper Johnson probably would change the trial result.  He claims that the superior court erred in concluding that Peter's statements were inadmissible hearsay that were not subject to certain hearsay exceptions.  We disagree.

a.      Hearsay Principles

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted.  ER 801(c).  The general rule is that hearsay is inadmissible unless one of the exceptions listed in ER 803 and 804 applies.  *State v. Heutink*, 12 Wn. App. 2d 336, 356, 458 P.3d 796, *review denied*, 195 Wn.2d 1027 (2020); *see* ER 802.

An out-of-court statement that repeats another out-of-court statement constitutes hearsay within hearsay or double hearsay.  *State v. Alvarez-Abrego*, 154 Wn. App. 351, 366, 225 P.3d

---

[3]  Jones assigns error to several findings of fact.  He does not present argument regarding specific findings of fact; his challenges are incorporated into his arguments on various issues.  Therefore, we do not address each finding of fact individually.

396 (2010). Hearsay within hearsay is admissible only if each of the hearsay statements is subject to one of the hearsay exceptions. ER 805.

We review de novo a trial court's interpretation of the evidentiary rules and we review the court's application of the rules for abuse of discretion. *State v. Rushworth*, 12 Wn. App. 2d 466, 470, 458 P.3d 1192 (2020). Jones raises issues regarding the application of the rules of evidence to his offered evidence. Therefore, we review his contentions for an abuse of discretion.

Here, there is no question that Peter's out-of-court statements in which he claimed that Nicholas admitted to shooting trooper Johnson constituted hearsay: they were out-of-court statements offered for the proof of the matter asserted. *See* ER 801(c). In addition, Nicholas's alleged out-of-court statements that Peter was repeating constituted double hearsay. Therefore, Peter's statements would be admissible only if a hearsay exception applies to his statements and a hearsay exception also applies to Nicholas's statements. *See* ER 805.

b. ER 803(a)(5) – Recorded Recollection

Jones argues that Peter's statements would be admissible as a recorded recollection under ER 803(a)(5). We disagree.

ER 803(a)(5) provides a hearsay exception for:

A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly.

Two of the requirements are relevant here: that the record was made when the matter was fresh in the witness's memory and that the record reflects the witness's knowledge correctly.

Regarding freshness, the superior court made a specific finding that Peter did not make the statements at issue when they were fresh in his memory. Instead, they were made 4 ½ years

after Nicholas's alleged admissions. Jones does not challenge this finding, which is supported by uncontested evidence.

When examining whether a statement accurately reflects the witness's prior knowledge, the superior court looks at the totality of the circumstances, which includes " '(1) whether the witness disavows accuracy; (2) whether the witness averred accuracy at the time of making the statement; (3) whether the recording process is reliable; and (4) whether other indicia of reliability establish the trustworthiness of the statement.' " *State v. Nava*, 177 Wn. App. 272, 291, 311 P.3d 83 (2013) (quoting *State v. Alvarado*, 89 Wn. App. 543, 552, 949 P.2d 831 (1998)).

Here, the superior court made express findings of fact that Peter disavowed his prior statements, the recording process was not reliable, and there was an absence of indicia of reliability to establish the trustworthiness of Peter's statements. We conclude that substantial evidence supports these findings.

The record supports a finding that Peter's out-of-court statements do not accurately reflect his prior knowledge. Peter specifically testified at the evidentiary hearing that Nicholas did not confess to shooting trooper Johnson. And he disavowed his statement that Nicolas admitted to the shooting in a letter he sent to Gilbertson shortly after his third statement. Moreover, Peter characterized his interview with Gilbertson as "this dude showed up and gave me money and I made statements." RP (May 29, 2019) at 104. Peter also wrote a letter to Jones's defense attorney and told her that when Gilbertson visited him in 2014, he was "not looking for the truth," and that Gilbertson "paid me money . . . and when that didn't work, he intimidated me into making statements that did not reflect actual events, but rather suited his needs." CP at 2445.

11

Jones relies on two cases in which ER 803(a)(5) was found applicable when the declarant could not recall giving the statement: *State v. Derouin*, 116 Wn. App. 38, 46-47, 64 P.3d 35 (2003) and *Alvarado*, 89 Wn. App. at 552. Although Peter did say that he could not recall making the statements, there was much more evidence in this case compared to those cases that called into question the reliability of the statements.

Jones also claims that McLeod's testimony that Peter told him that he heard Nicholas admit to shooting trooper Johnson corroborated Peter's statements. But McLeod's testimony is inadmissible double hearsay. In any event, this testimony is not enough to overcome the other evidence showing that Peter's statements were not reliable.

Based on the totality of the circumstances, we conclude that ER 803(a)(5) is inapplicable to Peter's out-of-court statements and that the superior court did not err in declining to apply this hearsay exception.

      c.    ER 801(d)(2)(v) – Statements of Coconspirator

Jones argues that Peter's and Nicholas's statements would be admissible as statements by coconspirators under ER 801(d)(2)(v). We disagree.

ER 801(d)(2)(v) provides that a statement is not hearsay if it is "offered against a party" and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Peter's and Nicholas's statements were not offered *against a party* by a coconspirator *of a party* in furtherance of a conspiracy. Jones is the only party to this action, and Peter and Nicholas were not coconspirators with Jones. Accordingly, we hold that ER 801(d)(2)(v) is inapplicable to Peter's and Nicholas's out-of-court statements and that the superior court did not err in declining to apply this provision.

12

d.   ER 803(a)(3) – State of Mind

Jones argues that Nicholas's alleged statements would be admissible under ER 803(a)(3) to show Peter's state of mind.  We disagree.

ER 803(a)(3) provides a hearsay exception for "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed."  The word "then" in the phrase "then existing" refers to the time the statement was made, not the time of the events described in the statement. *State v. Sanchez-Guillen*, 135 Wn. App. 636, 646, 145 P.3d 406 (2006).  In addition, "[t]he hearsay exception includes only statements describing the declarant's own emotions or feelings." 5C KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 803.10 (6th ed. 2016).

Jones argues that the state of mind hearsay exception applies because Nicholas's statements caused Peter to believe that Nicholas shot trooper Johnson and as a result got rid of gun parts from Nicholas.  But Peter's state of mind on the night of the shooting is irrelevant under ER 803(a)(3).  That exception applies only if the statement reveals *the declarant's* state of mind at the time the statement was made.  *Sanchez-Guillen*, 135 Wn. App. at 646.  And Nicholas's statements clearly do not relate to his emotions or feelings.

We conclude that ER 803(a)(3) is inapplicable to Nicholas's out-of-court statements and that the superior court did not err in declining to apply this hearsay exception.

e.   Summary

No hearsay exception applies to Peter's out-of-court statements, the focus of Jones's PRP.  In addition, no hearsay exception applies to the double hearsay: Nicholas's out-of-court

statements repeated in Peter's statements. Therefore, we hold that the trial court did not err in ruling that Peter's statements were inadmissible and as a result would not have changed the result at trial.

### 3. Discoverable by Exercise of Due Diligence

The superior court also concluded that Jones was not entitled to relief under the third requirement of RAP 16.4(c)(3) because Jones did not prove that Peter's statements could not have been discovered before trial by the exercise of due diligence. Jones argues that this conclusion was error. We disagree.

To be considered newly discovered evidence, a petitioner must show the evidence "could not have been discovered before trial by the exercise of due diligence." *Lui,* 188 Wn.2d at 569. Here, the unchallenged findings of fact show that police investigated Peter and Nicholas and disclosed the information to Jones prior to trial. This finding supports the superior court's conclusion that Jones could have discovered evidence regarding Peter and Nicholas before trial with due diligence. Therefore, we hold that the trial court did not err in ruling that Jones did not satisfy this requirement for newly discovered evidence.

## C. RIGHT TO PRESENT A DEFENSE

Jones argues that even if Peter's and Nicholas's statements constitute hearsay, the constitutional right to present a defense should outweigh the evidentiary rules in this case. We disagree.

### 1. Legal Principles

A criminal defendant has a constitutional right to present a defense. *State v. Jones*, 168 Wn.2d 713, 719-20, 230 P.3d 576 (2010). This right to present a defense derives from the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington

14

Constitution. *State v. Wade*, 186 Wn. App. 749, 763, 346 P.3d 838 (2015). There also is a fundamental due process right to present a defense under the Fourteenth Amendment. *State v. Lizarraga*, 191 Wn. App. 530, 551-52, 364 P.3d 810 (2015).

However, a defendant's right to present a defense is not absolute. *State v. Arndt*, 194 Wn.2d 784, 812, 453 P.3d 696 (2019). That right is subject to " 'established rules of procedure and evidence.' " *Lizarraga*, 191 Wn. App. at 553 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)). A defendant does not have "an unfettered right to offer [evidence] that is . . . inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988).

Our Supreme Court has developed a two-step process when addressing evidentiary rulings and the right to present a defense. *Arndt*, 194 Wn.2d at 797-98. First, the challenged evidentiary rulings are reviewed under an abuse of discretion standard. *Id.* at 797. Then the rulings are reviewed de novo to determine whether they violated a defendant's constitutional right to present a defense. *Id.* at 797-98. In evaluating whether the exclusion of evidence violates the defendant's constitutional right to present a defense, "the State's interest in excluding evidence must be balanced against the defendant's need for the information sought to be admitted." *Id.* at 812. In some cases involving evidence with high probative value, there may be no state interest compelling enough to exclude the evidence. *Id.*

2. Analysis

In *Lizarraga*, the court held that the trial court did not violate the defendant's right to present a defense by excluding a hearsay statement. 191 Wn. App. at 558. The court emphasized that "the hearsay rule has 'long been recognized and respected by virtually every State' and 'is based on experience and grounded in the notion that untrustworthy evidence should

not be presented to the triers of fact.' " *Id.* (quoting *Chambers,* 410 U.S. at 298). The court also noted that "allowing inadmissible hearsay testimony 'places the [witness's] version of the facts before the jury without subjecting the [witness] to cross-examination,' depriving the State 'of the benefit of testing the credibility of the statements' and denying the jury 'an objective basis for weighing the probative value of the evidence.' " *Id.* (quoting *State v. Finch,* 137 Wn.2d 792, 825, 975 P.2d 967 (1999)).

Jones argues that because Peter's statements have high probative value, Jones's need for the evidence outweighs the State's interest in applying the rules of evidence. He relies on *Chambers*, a United States Supreme Court case. In *Chambers*, the Court held that a state trial court violated the due process rights of a defendant charged with murder when it (1) refused to allow the defendant to cross-examine a witness named McDonald regarding his sworn confession to the crime, and (2) excluded on hearsay grounds the testimony of three persons who stated that McDonald had confessed to the crime. 410 U.S. at 302-03.[4]

Regarding the hearsay testimony, the Court emphasized that the circumstances "provided considerable assurance of [the] reliability" of McDonald's confessions. *Id.* at 300. First, the confessions were made spontaneously to close acquaintances shortly after the murder. *Id.* Second, the confessions were corroborated by an eyewitness who testified that McDonald shot the victim, testimony that McDonald had a gun immediately after the shooting, and proof that McDonald owned the type of gun used in the shooting. *Id.* Third, the confessions clearly were

---

[4] Jones also cites to *Holmes v. South Carolina*, 547 U.S. 319, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006), another case in which the Court held that application of an evidence rule violated the defendant's right to present a defense. However, the facts of that case are not analogous to Jones's case.

self-incriminatory and against McDonald's interest. *Id.* at 301. Fourth, McDonald was present at trial and could have been examined under oath about the confessions. *Id.*

The Court concluded:

The testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest. That testimony also was critical to Chambers' defense. In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.

We conclude that the exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process. In reaching this judgment, we establish no new principles of constitutional law. Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial.

*Id.* at 302-03.

Two keys facts distinguish *Chambers* from Jones's case. First, in *Chambers* the defendant offered *in-court* testimony from witnesses to whom McDonald had confessed. *Id.* at 292-93. Here, Peter denied at the hearing that Nicholas admitted that he had shot the trooper, and Jones relied entirely on his contrary double hearsay statements.

Second, a key aspect of the holding in *Chambers* was that the excluded testimony "bore persuasive assurances of trustworthiness." *Id.* at 302. Here, the trial court expressly found an "absence of indicia of reliability to establish the trustworthiness of Peter Boer's recorded statements to Jones' investigators." CP at 2782.

In addition, the Court in *Chambers* made it clear that its holding was based on the specific facts and circumstances of that case. 410 U.S. at 302-03. We agree that under

17

*Chambers* there may be cases where the right to present a defense outweighs the application of hearsay rules. But the facts and circumstances here do not compel that result.

We conclude that the superior court's determination that Peter's statements constituted inadmissible hearsay did not violate Jones's constitutional right to present a defense.

## CONCLUSION

We affirm the superior court's denial of Jones's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

LEE, C.J.

SUTTON, J.