# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of: | DIVISION ONE |
| | No. 83298-1-I |
| SEAN ANTHONY THOMPSON, | UNPUBLISHED OPINION |
| Petitioner. | |

DWYER, J. — Sean Thompson filed this personal restraint petition challenging the revocation of his community custody by the Indeterminate Sentence Review Board (ISRB). Thompson contends that the ISRB erroneously revoked his community custody based on alleged violations of community custody conditions that, according to Thompson, are either not statutorily authorized or are unconstitutional. Thompson further asserts that, even if the conditions are valid, the ISRB abused its discretion by revoking his community custody because, he avers, its decision is unsupported by the evidence.

In response, the ISRB asserts that Thompson's petition is untimely to the extent that it is premised on alleged violations of community custody conditions imposed more than two years prior to the filing of the petition. The ISRB concedes that one of the challenged community custody conditions, which prohibited Thompson from engaging in a "romantic relationship," is unconstitutionally vague. However, it asserts that each of the other conditions is

both statutorily authorized and constitutionally sound. The ISRB further contends that it properly exercised its discretion in revoking Thompson's community custody and returning him to prison. Thus, according to the ISRB, Thompson is not entitled to relief.

We disagree with the ISRB that any of Thompson's challenges are time-barred, as Thompson is seeking relief from alleged unlawful restraint resulting from an enforcement action based on violations of the conditions—not from the imposition of those conditions. We accept the ISRB's concession that the community custody condition regarding romantic relationships is unconstitutional. We conclude, however, that two of the challenged conditions are valid and that the ISRB properly revoked Thompson's community custody based on violations of those conditions. Because Thompson has not established an entitlement to relief, we deny his petition.

I

Thompson was found guilty by plea of one count of indecent liberties with forcible compulsion following a June 2004 incident in which he sexually assaulted a 19-year-old woman. A witness observed Thompson follow the victim, whom Thompson did not know, to the doorway of a Salvation Army shelter shortly after midnight. The witness then saw the victim lying on the ground in a fetal position while Thompson reached up her skirt in an attempt to remove her underwear. Thompson told the witness that the victim was his girlfriend. The victim refuted Thompson's statement and pleaded with the witness to help her. Thompson had been drinking heavily with his girlfriend on the night of the offense.

2

In December 2004, following Thompson's guilty plea, the superior court imposed an indeterminate term of confinement of 67 months to life. The court further ordered that Thompson spend in community custody any time period following his release from total confinement prior to the expiration of the maximum sentence.

Thompson had served approximately 71 months in prison when, in December 2010, the ISRB held a release hearing to determine whether Thompson should be released to community custody. The ISRB determined that Thompson's "use of alcohol is certainly a high risk for his reoffending," but that his participation in chemical dependency treatment while incarcerated had "served to mitigate his risk to reoffend sexually if released to the community with conditions."

In March 2011, the ISRB ordered Thompson released to community custody supervision under certain conditions. Among those conditions, the ISRB required that Thompson "must not peruse, view, use or possess any pornographic or sexually explicit materials, or frequent establishments where such is available without the prior written approval of [his] . . . sexual deviancy therapist and the prior knowledge of [his Community Corrections Officer (CCO)]." This "sexually explicit materials" condition further provided:

> "Sexually explicit materials" are any pictorial representations that are intended for sexual gratification. This includes, but is not limited to, material which shows genitalia, bodily excretory behavior that appears to be sexual in nature, physical stimulation of unclothed genitals, masturbation, sodomy (i.e., bestiality or oral or anal intercourse), flagellation or torture in the context of a sexual relationship, or emphasizing the depiction of human genitals.

Works of art or of anthropological significance are not considered "sexually explicit materials."

The ISRB additionally imposed a condition requiring that Thompson "not engage in a romantic relationship without first disclosing [his] status as a sex offender" and "disclos[ing] any romantic relationships to [his] CCO and [his] sexual deviancy therapist."

In June 2019, following years of apparent compliance with his community custody conditions, Thompson failed a polygraph examination in which he was asked whether he had viewed or possessed "sexually explicit materials" in violation of the condition imposed at his release. Based on the results of the examination, Nicole Strasburger, Thompson's CCO at that time, searched Thompson's cell phone. Strasburger reported that she had "never found so much pornography in one small time period" and expressed concern that Thompson had performed Internet searches for "[y]oung teen girls" and similar search terms. Thompson "acknowledged this was a huge concern" and a violation of the condition prohibiting him from viewing or possessing sexually explicit materials.

Thompson thereafter failed another polygraph examination in which he was questioned regarding his access of pornographic or sexually explicit materials. Following the examination, Thompson admitted to his new CCO, Bryan Dalton, that he had been shown pornographic videos by a coworker while at work. As a result, on October 25, 2019, the ISRB imposed an additional community custody condition on Thompson, directing him to refrain from "access[ing] the internet without developing a

4

written safety plan approved by [his] CCO . . . and installing any special equipment on [his] computer required by [his] CCO as a part of [the] safety plan." Thompson signed the condition and the safety plan on November 19, 2019.

Then, on December 24, 2019, Thompson entered into a stipulated agreement in which he acknowledged violations of his community custody conditions, including accessing the Internet without approval, using pornography, possessing pornography, and engaging in a romantic relationship without approval. Thompson was thereafter instructed by his CCO to engage in a sexual deviancy evaluation and related treatment. Thompson did not do so. On October 29, 2020, the ISRB issued a notice of violation. CCO Dalton recommended therein that Thompson remain in the community but engage in sexual deviancy treatment and follow treatment recommendations. The ISRB determined that Thompson was guilty of the violations and ordered that he continue to follow his conditions of supervision.

On February 17, 2021, Thompson for the third time failed a polygraph examination regarding his involvement in activities prohibited by his community custody conditions. Examination results indicated that Thompson was not being truthful regarding whether he had engaged in sexual activity with another person, browsed the Internet, or possessed or viewed sexually explicit material. In a subsequent discussion with CCO Dalton, Thompson initially denied any violative behavior. However, he

then reported that he had been watching pornographic DVDs provided to him by a friend. With regard to involvement in romantic relationships, Thompson reported having a friend named "Raquel" whom he had "made out with" but who was "no good for him" because of her heavy drinking of alcohol. Thompson additionally reported no longer wanting to be in a relationship with his girlfriend, Valentina Taylor, and he asked CCO Dalton to help him disengage from that relationship. Thompson further admitted that he feared relapse of his own alcoholism, and resulting criminal conduct, due to his relationship with Raquel. CCO Dalton concluded that Thompson's ongoing use of pornography was "an outlet" resulting from his "unhealthy dating relationship" with Taylor. Based on Thompson's statements, CCO Dalton concluded that "sobriety will always be in the forefront, but [Thompson's] relationship, sexual needs/desires and pornography addiction need some serious attention to ensure [Thompson] does not return to prison."

Based on those events, the ISRB issued an additional notice of violation on February 18, 2021. The notice indicated that Thompson had violated his conditions of supervision by accessing the Internet without approval by his CCO, using and possessing pornographic material, and engaging in a romantic relationship without approval. On February 23, 2021, the ISRB imposed additional community custody conditions, including that Thompson (1) "not engage in a romantic or sexual relationship unless it is approved in advance with the CCO and therapist,"

6

(2) "have no contact with Valentina Taylor, unless authorized by the CCO,"
(3) "submit to search of your person, residence, automobile, or other personal property," and (4) "not possess or access internet capable devices without the CCO and Sexual Deviancy Therapist approval."

On March 22, 2021, the ISRB issued an additional notice of violation, alleging that Thompson had engaged in a romantic relationship and had contact with Taylor without approval. The notice was again premised on polygraph examination results and Thompson's subsequent discussion with CCO Dalton regarding the violative behavior. Thompson reported to CCO Dalton both being in contact with Taylor and having had a sexual relationship with Raquel. Later in the discussion, Thompson recanted all of the admissions, stating to CCO Dalton, "I'm done with you, take me to jail," and reporting that "[e]verything I told you was a lie." Thompson was thereafter arrested due to the violative behavior. Call records obtained following his arrest showed frequent calls to both Raquel and Taylor, thus corroborating Thompson's admissions to CCO Dalton. CCO Dalton recommended in this third notice of violation that the ISRB revoke Thompson's community custody.

On April 15, 2021, the ISRB held a violation hearing regarding Thompson's alleged violations of four conditions of his community custody, including (1) accessing the Internet without approval, (2) using and possessing pornographic material, (3) engaging in a romantic relationship without approval, and (4) having contact with Taylor without approval. Thompson pleaded guilty to

7

violations of every condition except the condition prohibiting the use and possession of pornographic material. At the hearing, CCO Dalton recommended revocation of Thompson's community custody due to Thompson's repeated contact with Taylor and Raquel, his continued "risky behavior" with Raquel despite apparent knowledge that "one slip and relapse" could result in him committing another sex offense, and his continued use of pornography, including by "manipulat[ing] the conditions of his supervision" by requesting that a friend provide him with such materials.

On April 23, 2021, the ISRB entered findings and conclusions in which it determined that Thompson had committed all four of the alleged violations. The ISRB thus revoked Thompson's community custody. It based the revocation on Thompson's repeated failed polygraph examinations regarding his use of sexually explicit materials and his engagement in unapproved sexual relationships; his years of undetected violative behavior, which the ISRB determined had been uncovered by Thompson's disclosures; his status as a "level Two sex offender" engaged in his offense cycle; and his repeated contact with Taylor and Raquel. Based on its findings, the ISRB set a new minimum sentence of 24 months of incarceration.

Thompson thereafter filed this personal restraint petition.

II

We first address the ISRB's contention, in response to Thompson's petition, that Thompson's challenges to two community custody conditions are untimely because those conditions were imposed more than two years prior to the filing of his personal restraint petition. We disagree. Thompson alleges that he is unlawfully restrained not because he was subject to those conditions, but because the ISRB revoked his conditional release based on violations of the conditions. Thus, it is the ISRB's revocation decision, not the imposition of the community custody conditions, that Thompson challenges in this petition. Because Thompson's petition was filed within two years of the revocation decision, the petition is not time-barred.

To obtain relief through a personal restraint petition, the petitioner must demonstrate both that he is restrained pursuant to RAP 16.4(b)[1] and that such restraint is unlawful pursuant to RAP 16.4(c). In re Pers. Restraint of Grantham, 168 Wn.2d 204, 212-13, 227 P.3d 285 (2010) (quoting In re Pers. Restraint of Isadore, 151 Wn.2d 294, 298-99, 88 P.3d 390 (2004)). Restraint is unlawful if "[t]he conditions or manner of the restraint of petitioner are in violation of the Constitution of the United States or the Constitution or laws of the State of Washington." RAP 16.4(c)(6). The availability of such collateral relief, however, is limited. In re Pers. Restraint of St. Pierre, 118 Wn.2d 321, 328, 823 P.2d 492 (1992) ("A personal restraint petition is not to operate as a substitute for a direct

---

[1] "A petitioner is under a 'restraint' if the petitioner has limited freedom because of a court decision in a civil or criminal proceeding, the petitioner is confined, the petitioner is subject to imminent confinement, or the petitioner is under some other disability resulting from a judgment or sentence in a criminal case." RAP 16.4(b).

appeal."). This is so because "[c]ollateral relief undermines the principles of finality of litigation, degrades the prominence of the trial, and sometimes costs society the right to punish admitted offenders." In re Pers. Restraint of Hagler, 97 Wn.2d 818, 824, 650 P.2d 1103 (1982).

Thus, when a petitioner challenges a criminal judgment and sentence, the collateral attack must be filed within "one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." RCW 10.73.090(1). However, this statutory time bar does not apply when a petitioner seeks relief from restraint imposed by other government action. In re Pers. Restraint of Betts, 21 Wn. App. 2d 173, 176, 505 P.3d 148 (2022); In re Pers. Restraint of Heck, 14 Wn. App. 2d 335, 340, 470 P.3d 539 (2020). Instead, we have held that the two year "catchall" statute of limitations, set forth in RCW 4.16.130,[2] applies to petitions challenging a government action other than a judgment and sentence. Heck, 14 Wn. App. 2d at 340-41 (prison disciplinary proceeding); see also Betts, 21 Wn. App. 2d at 177 (ISRB conditional release determination).

Here, the ISRB, in response to Thompson's petition, asserts that Thompson's challenges to the community custody conditions imposed in 2011 are time-barred.[3] Citing our decisions in Heck and Betts, the ISRB contends that any challenge to the validity of a condition of supervision must be brought within two years of the date that the condition was imposed. Thompson asserts, to the

---

[2] RCW 4.16.130 provides that "[a]n action for relief not hereinbefore provided for, shall be commenced within two years after the cause of action shall have accrued."

[3] These conditions include the "sexually explicit materials" condition and the "romantic relationship" condition.

contrary, that the two-year limitation period began to run on April 23, 2021, when the ISRB revoked his community custody based on its findings of violations of those conditions. He contends that, because he filed this personal restraint petition on November 3, 2021, the challenges raised herein are timely. Thompson's argument is the more persuasive.

Pursuant to our decisional authority, the applicable two-year limitation period begins to run when the government action subsequently challenged on collateral attack occurs. In Heck, the petitioner asserted a due process challenge to a prison disciplinary proceeding, contending that insufficient evidence supported the guilty finding. 14 Wn. App. 2d at 340. Because the petition challenging the disciplinary proceeding was filed more than two years after that government action occurred, we held that the petition was untimely. Heck, 14 Wn. App. 2d at 341. Similarly, in Betts, we held that a petition challenging a denial of conditional release was time-barred because the petition was not filed within two years of the ISRB's final written decision. 21 Wn. App. 2d at 174, 178.

Thompson does not here assert that he is unlawfully restrained due to the imposition of invalid community custody conditions. When a petitioner does so assert, the unlawful restraint from which the petitioner seeks relief is the requirement that he comport himself consistently with such conditions. See State v. Bahl, 164 Wn.2d 739, 747, 193 P.3d 678 (2008) (noting with approval the reasoning that "'the fact that a party may be forced to alter his behavior so as to avoid penalties under a potentially illegal regulation is, in itself, a hardship'" (quoting United States v. Loy, 237 F.3d 251, 257 (3d Cir.2001))). In contrast,

11

here, Thompson contends that he is being unlawfully restrained as a result of the ISRB's revocation decision, which resulted in an additional term of incarceration. This is a separate restraint from that which arises due to the imposition of a community custody condition. This is so despite Thompson's assertion that the revocation decision was improper because it was premised on alleged violations of conditions of supervision that, according to Thompson, are invalid. Restraint resulting from the enforcement of an invalid condition of supervision remains unlawful restraint. See RAP 16.4(c)(6) (restraint is unlawful if "[t]he conditions or manner of the restraint of petitioner are in violation of the Constitution of the United States or the Constitution or laws of the State of Washington").

The ISRB's assertion that some of Thompson's challenges are untimely is premised on the misperception that Thompson seeks relief from the restraint resulting from the conditions themselves. He does not. Rather, Thompson seeks relief from the restraint resulting from the ISRB's revocation decision. Accordingly, because his petition was filed within two years from the final revocation decision, the petition is timely.

III

Thompson asserts that the ISRB improperly revoked his community custody because the revocation decision was premised on violations of invalid community custody conditions. He contends that none of the four conditions that he was found to have violated is reasonably related to his crime of conviction. Thus, he asserts, those conditions are not statutorily authorized. Thompson further contends that other conditions of community custody are unconstitutional

12

and, therefore, are not a proper basis for the revocation of his community custody.

We first address the ISRB's related contention that the authorizing statute does not require that conditions of supervision imposed by the ISRB be reasonably related to the crime of conviction. Our Supreme Court, in intervening decisional authority, appears to have foreclosed that argument. Accordingly, in determining whether the challenged conditions are statutorily authorized, we evaluate whether each condition is related to the underlying offense.

We conclude that two of the challenged conditions of supervision—the "sexually explicit materials" condition and the Internet monitoring condition—are, indeed, related to Thompson's crime of conviction. Thus, these conditions are statutorily authorized. In addition, although we accept the ISRB's contention that the "romantic relationship" condition is unconstitutionally vague, we hold that Thompson's constitutional challenge to the Internet monitoring condition is without merit. Thus, we conclude that the violations of two of the conditions challenged herein constitute a valid basis for the ISRB's revocation decision.

A

Thompson first asserts in his petition that the ISRB lacked the statutory authority to impose the community custody conditions on which the ISRB's revocation decision was premised. He contends that the ISRB may impose only conditions of community custody that are reasonably related to the crime of conviction, and that the conditions imposed here are not related to his underlying

13

offense. Accordingly, Thompson asserts that the ISRB could not properly revoke his community custody based on violations of those conditions.

The ISRB contends, on the other hand, that not all community custody conditions that it imposes must be reasonably related to the crime of conviction. However, pursuant to our Supreme Court's intervening decisional authority, the ISRB appears to be incorrect. We conclude that one of the challenged conditions—the condition prohibiting Thompson from contacting Taylor—is not reasonably related to the crime of conviction. Thus, the ISRB was not statutorily authorized to impose that condition. We additionally conclude, however, that two other conditions—the "sexually explicit materials" condition and the Internet monitoring condition—are related to Thompson's underlying offense. Accordingly, the ISRB was authorized by statute to impose those conditions.

1

We first address the ISRB's contention that, pursuant to the relevant statute, it may lawfully impose conditions of community custody that are not related to the crime of conviction, so long as such conditions are related either to the risk of reoffense or to the safety of the community. Based on our Supreme Court's intervening decisional authority, we disagree. See In re Pers. Restraint of Ansell, No. 100753-1, slip op. at 19-21 (Wash. Aug. 10, 2023) (lead opinion), http://www.courts.wa.gov/opinions/pdf/1007531.pdf; see also Ansell, No. 100753-1, slip op. at 1 (Gordon McCloud, J., concurring in part/dissenting in part).

Thompson committed the underlying offense in 2004. Accordingly, his sentence is governed by the version of the Sentencing Reform Act of 1981

(SRA), chapter 9.94A RCW, in effect at that time. Ansell, No. 100753-1, slip op. at 18 (lead opinion); see Ansell, No. 100753-1, slip op. at 1 (Whitener, J., concurring) (applying same statute). See also RCW 9.94A.345. Thus, the pertinent statute is former RCW 9.94A.713 (2001), which sets forth the process and authority by which the ISRB may impose conditions of community custody.[4] The statute additionally provides an administrative process through which the offender may object to such conditions. Former RCW 9.94A.713(5) (2001). It states:

> By the close of the next business day, after receiving notice of a condition imposed by the board or the department, an offender may request an administrative hearing under rules adopted by the board.[5] The condition shall remain in effect unless the hearing examiner finds that it is not reasonably related to any of the following:
> 　　(a) The crime of conviction;
> 　　(b) The offender's risk of reoffending; or
> 　　(c) The safety of the community.

Here, the ISRB, without the benefit of our Supreme Court's opinions in Ansell, asserted that former RCW 9.94A.713 does not require that every community custody condition it imposes be related to the underlying offense. Instead, the ISRB read the statutory language as disjunctive, rather than conjunctive, such that a reasonable relation to the crime of conviction is a sufficient, but not a necessary, basis for the imposition of a condition. In other words, the ISRB contended that a condition is also statutorily authorized if reasonably related to the risk of reoffense or the safety of the community. Our

---

[4] The statute has since been recodified as RCW 9.94A.704. LAWS OF 2008, ch. 231, §§ 57-59; LAWS OF 2009, ch. 28, § 12.

[5] The "board," as employed in the statute, refers to the ISRB.

Supreme Court's decision in Ansell, however, appears to have foreclosed such a reading of the statute. No. 100753-1, slip op. at 19-21 (lead opinion); see also Ansell, 100753-1, slip op. at 1 (Gordon McCloud, J., concurring in part/dissenting in part).

In the lead opinion in Ansell, four justices concluded that the statutory language of former RCW 9.94A.713(5) "outlines the grounds for a person to challenge a condition and states in the negative that the condition will remain in effect unless it is *not reasonably related to any of three topics*." No. 100753-1, slip op. at 19 (lead opinion). The four justices therein rejected the ISRB's contention that a condition of community custody is valid if it reasonably relates to any one of the enumerated criteria. Ansell, No. 100753-1, slip op. at 20 (lead opinion). Instead, the lead opinion determined, "[t]he more natural reading of the statute is that the person subject to the condition may challenge it on the basis that it does not relate to all three topics." Ansell, No. 100753-1, slip op. at 20 (lead opinion). Thus, it concluded that "the ISRB is authorized to impose community custody conditions that are reasonably related to the crime of conviction, the risk of reoffense, *and* the safety of the community—*a condition that fails to relate to all three topics is invalid*." Ansell, No. 100753-1, slip op. at 21 (first emphasis added) (lead opinion). In a separate opinion primarily addressing a different issue, one justice agreed with the lead opinion's conclusion that "[c]ommunity custody conditions must be related to the crime of

conviction." Ansell, No. 100753-1, at 1 (Gordon McCloud, J., concurring in part/dissenting in part).[6]

Thus, our Supreme Court's opinions in Ansell appear to foreclose the ISRB's assertion that community custody conditions need be related to only one of the enumerated criteria in former RCW 9.94A.713(5). Instead, the ISRB is authorized to impose a condition of community custody only if it is reasonably related to the crime of conviction, the risk of reoffense, *and* the safety of the community. Because, here, Thompson contends that the challenged conditions are not reasonably related to the crime of conviction, we evaluate whether each is statutorily authorized on that basis.

2

Thompson contends that the community custody conditions imposed by the ISRB are not statutorily authorized because they are unrelated to his crime of conviction.[7] We agree that the condition prohibiting contact with Taylor is not reasonably related to the underlying offense. We disagree, however, that two additional challenged conditions—the "sexually explicit materials" condition and the Internet monitoring condition—are unrelated to Thompson's crime of

---

[6] In an opinion concurring only in the result, four justices "disagree[d] that the ISRB exceeds its authority under former RCW 9.94A.713(5) (2001) when it imposes a community custody condition that is not crime related, so long as the condition is reasonably related to another of the enumerated criteria." Ansell, No. 100753-1, at 1 (Whitener, J., concurring).

[7] Because, *infra*, we accept the ISRB's concession that the "romantic relationship" condition is unconstitutionally vague, we need not address whether that condition was statutorily authorized. Accordingly, we consider only whether the ISRB was authorized to impose the three remaining conditions—the "sexually explicit materials" condition, the Internet access condition, and the condition prohibiting contact with Taylor.

17

conviction. Accordingly, we reject Thompson's argument that the ISRB exceeded its statutory authority by imposing these conditions.

Generally, we review community custody conditions for abuse of discretion "and will reverse them only if they are 'manifestly unreasonable.'" State v. Irwin, 191 Wn. App. 644, 652, 364 P.3d 830 (2015) (quoting State v. Sanchez Valencia, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010)). Whether the ISRB has authority to impose such restrictions, however, is reviewed de novo. Ansell, No. 100753-1, slip op. at 17 (lead opinion). "Imposition of an unconstitutional condition would, of course, be manifestly unreasonable." Bahl, 164 Wn.2d at 753. Similarly, a community custody condition imposed without statutory authorization "is manifestly unreasonable and should be removed." In re Pers. Restraint of Winton, 196 Wn.2d 270, 278, 474 P.3d 532 (2020).

(i)

Thompson first asserts that the "sexually explicit materials" condition is not reasonably related to his crime of conviction and, thus, that the ISRB exceeded its authority by imposing that condition. We disagree. Pursuant to our Supreme Court's decisional authority, a condition prohibiting the use or possession of sexually explicit materials is reasonably related to the crime of conviction when the underlying offense is a sex crime. Accordingly, the ISRB did not abuse its discretion by imposing this condition.

Our Supreme Court has addressed this very argument. See State v. Nguyen, 191 Wn.2d 671, 425 P.3d 847 (2018). In Nguyen, the offender, who had been convicted of a sex offense, asserted that a community custody

18

condition prohibiting him from possessing or viewing "sexually explicit materials" was not "crime-related."[8]  191 Wn.2d at 683.  Our Supreme Court determined that imposing such a condition was not an abuse of discretion.  Nguyen, 191 Wn.2d at 686.  The offender, the court explained, had

> committed sex crimes and, in doing so, established his inability to control his sexual urges.  It is both logical and reasonable to conclude that a convicted person who cannot suppress sexual urges should be prohibited from accessing "sexually explicit materials," the only purpose of which is to invoke sexual stimulation.

Nguyen, 191 Wn.2d at 686.  The court reasoned that, "by imposing a prohibition on sexually explicit material, the sentencing court appeared to believe that such materials may trigger the defendant to reoffend or, perhaps, commit another sex crime."  Nguyen, 191 Wn.2d at 685.  Thus, the court concluded that the condition was "crime-related."  Nguyen, 191 Wn.2d at 683.

Thompson nevertheless asserts that, notwithstanding our Supreme Court's decision in Nguyen, the "unique facts of this case" demonstrate that the ISRB was not authorized to impose such a condition here.  This is so, he contends, because "no sexual deviancy treatment was originally recommended" and his "current treatment provider would have testified, had she been asked," that pornography is not part of Thompson's "offense cycle."  Thompson's argument is unavailing.  The pertinent statute requires only that the condition be "reasonably related" to "[t]he crime of conviction."  Former RCW 9.94A.713(5)(a).

---

[8] There, the challenged condition was imposed by the sentencing court, which, pursuant to statute, is authorized to impose "crime-related prohibitions."  Nguyen, 191 Wn.2d at 683 (citing RCW 9.94A.703(3)(f); RCW 9.94A.030(10)).

When the underlying offense is a sex crime, the ISRB does not abuse its discretion by prohibiting the offender from accessing "sexually explicit materials." Nguyen, 191 Wn.2d at 685-86; see also State v. Frederick, 20 Wn. App. 2d 890, 907-08, 506 P.3d 690 (2022) (holding that, pursuant to Nguyen, a "sexually explicit materials" condition imposed by the ISRB was related to a sex offender's crime of conviction).

When the offender has been convicted of a sex crime, a "sexually explicit materials" condition is reasonably related to the crime of conviction. Nguyen, 191 Wn.2d at 686; Frederick, 20 Wn. App. 2d at 907-08. The ISRB was thus statutorily authorized to impose the condition challenged herein. Former RCW 9.94A.713(5). Accordingly, it did not abuse its discretion in so doing.

(ii)

Thompson further contends that the Internet monitoring condition is not statutorily authorized because his crime of conviction did not involve use of the Internet. We disagree. Such a condition is authorized as a crime-related monitoring condition to assess compliance with a prohibition against the use or possession of sexually explicit materials. Accordingly, the ISRB did not abuse its discretion by imposing this monitoring condition.

A "crime-related prohibition" includes "affirmative acts necessary to monitor compliance" with validly imposed conditions. Former RCW 9.94A.030(12) (2004); see former RCW 9.95.0001(3) (2004) (stating that "'[c]rime-related prohibition' has the meaning defined in RCW 9.94A.030"). Indeed, "[i]f there were no way to monitor an offender's compliance with the

20

conditions of community custody, the imposition of such conditions would be meaningless." State v. McClinton, 186 Wn. App. 826, 835, 347 P.3d 889 (2015). Thus, our Supreme Court has "approved of monitoring tools used to enforce . . . valid parole or probation conditions." State v. Olsen, 189 Wn.2d 118, 130, 399 P.3d 1141 (2017) (holding that random urinalysis testing was a permissible means to monitor compliance with a condition prohibiting drug and alcohol use); see also State v. Combs, 102 Wn. App. 949, 952, 10 P.3d 1101 (2000) (holding that polygraph testing may be required to monitor an offender's compliance with other properly imposed conditions).

Here, the ISRB imposed the Internet monitoring condition following multiple failed polygraph examinations indicating that Thompson had not complied with the "sexually explicit materials" condition. After searching Thompson's cell phone, his CCO reported that she had "never found so much pornography in one small time period." Thompson had also reported that he had been shown pornographic videos by a coworker. The condition prohibiting Thompson from "access[ing] the internet without developing a written safety plan approved by [his] CCO" was thus imposed in response to violations of the condition prohibiting the use or possession of sexually explicit materials.

For this reason, Thompson's assertion that the Internet monitoring condition is not reasonably related to his crime of conviction is unavailing. This condition, analogous to random drug testing, was authorized as a crime-related monitoring tool to assess Thompson's compliance with a separate—and validly

imposed—condition. Accordingly, the ISRB did not exceed its statutory authority by imposing the Internet monitoring condition.

(iii)

Thompson additionally asserts that the condition prohibiting contact with Taylor is not reasonably related to his crime of conviction and, thus, that the ISRB was not statutorily authorized to impose the condition. With this assertion, we agree. The purported connection, asserted by the ISRB, between Thompson's relationship with Taylor and his use of pornography does not render this condition crime-related. Accordingly, we hold that the ISRB exceeded its statutory authority by imposing the condition.

Thompson here asserts that the condition prohibiting unapproved contact with Taylor is not related to his crime of conviction. The ISRB, in response, contends that the condition is sufficiently crime-related because, according to the ISRB, it is related to Thompson's violation of the "sexually explicit materials" condition. In support of this contention, the ISRB cites to a notice of violation submitted by Thompson's CCO, which describes Thompson's relationship with Taylor as an "unhealthy dating relationship" in which Thompson's "emotional or physical relationship needs" are not being met, causing Thompson "to seek fulfillment elsewhere." The notice of violation opines that Thompson's relationship with Taylor "appears to contribute to [his] ongoing use of pornography."

The ISRB does not abuse its discretion by imposing a condition of community custody "if a 'reasonable relationship' between the crime of conviction

22

and the community custody condition exists." Nguyen, 191 Wn.2d at 684 (quoting Irwin, 191 Wn. App. at 658-59). However, although "[t]he prohibited conduct need not be identical to the crime of conviction," "there must be 'some basis for the connection.'" Nguyen, 191 Wn.2d at 684 (quoting Irwin, 191 Wn. App. at 657). Here, we hold that there is not a sufficient connection between Thompson's crime of conviction and his "unhealthy" relationship with Taylor so as to render the challenged condition crime-related. We are unpersuaded by the ISRB's assertion that such a connection exists because the "unfulfilling" nature of the relationship purportedly encourages Thompson's use of pornography.

Because the condition prohibiting unapproved contact with Taylor is not related to the underlying offense for which Thompson was convicted, the ISRB exceeded its statutory authority by imposing that condition. Accordingly, the guilty finding by the ISRB related to violation of that condition is not a valid basis for the revocation decision.

B

Thompson further contends that certain community custody conditions imposed by the ISRB are constitutionally infirm. Specifically, he asserts that the "romantic relationship" condition is unconstitutionally vague and that the Internet monitoring condition impermissibly interferes with his First Amendment rights.[9] The ISRB concedes that the "romantic relationship" condition is unconstitutional, and we accept its concession. We conclude, however, that the Internet

---

[9] Thompson additionally contends that the condition prohibiting contact with Taylor unconstitutionally impinges his constitutional right to intimate association. Because we conclude that the ISRB was without statutory authorization to impose that condition, we do not address Thompson's constitutional challenge.

monitoring condition does not impermissibly impinge Thompson's constitutional rights. Accordingly, we reject Thompson's contention that this condition is constitutionally infirm.

1

Thompson first asserts that the "romantic relationship" condition is unconstitutionally vague. The ISRB concedes that, pursuant to our Supreme Court's decision in Nguyen, Thompson is correct. We agree and, thus, accept the ISRB's concession.

The Fourteenth Amendment and article I, section 3 of our state constitution require that citizens be afforded fair warning of proscribed conduct. Bahl, 164 Wn.2d at 752. Accordingly, "a community custody condition is unconstitutionally vague if it '(1) . . . does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) . . . does not provide ascertainable standards of guilt to protect against arbitrary enforcement.'" Nguyen, 191 Wn.2d at 678 (alterations in original) (internal quotation marks omitted) (quoting Bahl, 164 Wn.2d at 752-53).

In Nguyen, our Supreme Court held that the term "dating relationship" in a community custody condition is not unconstitutionally vague, as "a person of ordinary intelligence can distinguish a 'dating relationship' from other types of relationships." 191 Wn.2d at 682. There, the defendant, in asserting that the imposed condition was unconstitutional, relied on United States v. Reeves, 591 F.3d 77 (2d Cir. 2010), in which the Second Circuit concluded that the term "significant romantic relationship" is unconstitutionally vague. Nguyen, 191

Wn.2d at 682-83. However, our Supreme Court distinguished Reeves, explaining that "[t]he terms 'significant' and 'romantic' are highly subjective qualifiers, while 'dating' is an objective standard that is easily understood by persons of ordinary intelligence." Nguyen, 191 Wn.2d at 683. Relying on this decisional authority, we subsequently held that the term "romantic relationship" in a community custody condition is unconstitutionally vague. State v. Peters, 10 Wn. App. 2d 574, 591, 455 P.3d 141 (2019).

The ISRB here imposed the "romantic relationship" condition in 2011, prior to our Supreme Court's decision in Nguyen, 191 Wn.2d at 683. We accept the State's concession that, pursuant to this subsequent decisional authority, the condition imposed on Thompson is unconstitutionally vague. Accordingly, violation of this condition cannot be a valid basis for the ISRB's revocation decision.

2

Thompson additionally asserts that the Internet monitoring condition impermissibly impinges his First Amendment rights. Specifically, he contends that the condition is not sufficiently tailored because, according to Thompson, the ISRB could have simply required that he install monitoring software on his own Internet-capable device. We disagree. We conclude that the Internet monitoring condition, which permitted Thompson to access the Internet on his own device, was sufficiently tailored to comply with constitutional mandates.

"[T]he mere fact that a custody condition impinges on a constitutional right does not invalidate it, because '[a]n offender's usual constitutional rights during

25

community placement are subject to SRA-authorized infringements.'" In re Pers. Restraint of Sickels, 14 Wn. App. 2d 51, 69, 469 P.3d 322 (2020) (quoting State v. Hearn, 131 Wn. App. 601, 607, 128 P.3d 139 (2006)); see also Winton, 196 Wn.2d at 275 ("Community custody is an extension of incarceration where an individual's 'constitutional rights . . . are subject to the infringements authorized by the SRA, RCW 9.94A.'" (quoting State v. Ross, 129 Wn.2d 279, 287, 916 P.2d 405 (1996))). Indeed, "[l]imitations upon fundamental rights are permissible" for the duration of an offender's sentence if the restrictions are "imposed sensitively . . . [and are] 'reasonably necessary to accomplish the essential needs of the state and public order.'" State v. Riley, 121 Wn.2d 22, 37-38, 846 P.2d 1365 (1993) (quoting Malone v. United States, 502 F.2d 554, 556 (9th Cir.1974)). A condition of community custody that "restrict[s] a convicted defendant's access to the Internet" is consistent with the First Amendment if the restriction is "narrowly tailored to the dangers posed by the specific defendant." Frederick, 20 Wn. App. 2d at 904 (citing State v. Johnson, 197 Wn.2d 740, 744-45, 487 P.3d 893 (2021)).

Here, Thompson pleaded guilty to "[a]ccessing the internet without approval from [his] CCO." The violation was premised on Thompson's report that he had used his friends' Internet-capable devices to access the Internet. Specifically, this conduct was in violation of a provision of the "Internet Use Safety Plan," signed by Thompson, that prohibited him from using any Internet-capable device "other than [his] own . . . unless approved by [his] CCO." Thompson was permitted to use his own Internet-capable device, on which he

26

agreed to allow the installation of monitoring software. He also consented to searches of his own device to ensure compliance. Thus, it was by prohibiting Thompson from accessing the Internet via devices other than his own that the ISRB was able to monitor his compliance with the "sexually explicit materials" condition.

Thompson nevertheless asserts that the Internet monitoring condition was not sufficiently tailored because, according to Thompson, a condition requiring that he install Internet monitoring software would have been adequate to monitor his access to prohibited materials.[10] However, as the facts here demonstrate, this is not so. Thompson disregards that the Internet monitoring agreement *did* allow for the installation of monitoring software on his Internet-capable device. However, if Thompson was nevertheless permitted to use other Internet-capable devices, the ISRB would be unable to monitor his compliance with the "sexually explicit materials" condition, thus wholly undermining the purpose of the monitoring condition. Thus, the restriction prohibiting Thompson from using unapproved devices, on which no monitoring software could be installed, is necessary to effectuate the Internet monitoring condition. Contrary to Thompson's assertion, requiring the installation of monitoring software on his own device would not be sufficient to ensure complete monitoring of his access to prohibited materials.

---

[10] Thompson also asserts that the condition "is a labyrinth of confusing and conflicting provisions" that imposes restrictions unrelated to his access of sexually explicit materials. However, Thompson, in his petition, is challenging the ISRB's revocation decision, not the imposition of the Internet monitoring condition itself. Accordingly, his challenge is to the guilty finding based on the specific violation committed—that he had used unapproved devices to access the Internet.

Thompson was found to have violated the provision of the Internet monitoring condition prohibiting the use of unapproved Internet-capable devices. This provision was necessary to effectuate the monitoring condition itself. Given the ISRB's interest in tracking Thompson's compliance with the "sexually explicit materials" condition, it did not abuse its discretion by imposing the challenged provision of the Internet monitoring condition.

IV

Thompson ultimately asserts that, even if the conditions he was found to have violated are lawful, the ISRB improperly revoked his community custody because the reasons for revocation are unsupported by the evidence. We disagree. Both the "sexually explicit materials" condition and the Internet monitoring condition were validly imposed by the ISRB. Contrary to Thompson's assertion, the ISRB's findings of violations of these conditions are supported by the evidence. Thompson has demonstrated neither that the ISRB failed to follow its own procedural rules nor that its decision is based on speculation or conjecture. Accordingly, we conclude that the ISRB acted within its discretion in revoking Thompson's community custody.

"The decision to revoke community custody is based primarily on factual determinations about whether the individual violated the conditions of community custody." Grisby v. Herzog, 190 Wn. App. 786, 801-02, 362 P.3d 763 (2015). Accordingly, we review decisions of the ISRB revoking community custody for an abuse of discretion. In re Pers. Restraint of Campbell, No. 57303-2-II, slip op. at 7 (Wash. Ct. App. Jul. 25, 2023), www.courts.wa.gov/opinions/pdf/D2%2057303-

28

2-II%20Published%20Opinion.pdf. "ISRB decisions are entitled to substantial deference and 'the courts will not substitute their discretion for that of the [ISRB].'" Campbell, No. 57303-2-II, slip op. at 7 (quoting In re Pers. Restraint of Dyer, 175 Wn.2d 186, 196, 283 P.3d 1103 (2012)). "The ISRB abuses its discretion if it fails to follow its own procedural rules or if it bases its decision solely on speculation or conjecture." Campbell, No. 57303-2-II, slip op. at 7.

"Under an indeterminate sentence, any violation of community custody conditions subjects the offender to arrest, detention, and further sanctions, including possible revocation of community custody and return to jail." State v. Slattum, 173 Wn. App. 640, 653, 295 P.3d 788 (2013). If an offender "violates any condition or requirement of community custody," the ISRB "may transfer the offender to a more restrictive confinement status to serve up to the remaining portion of the sentence." RCW 9.95.435(1).

Here, Thompson was found to have violated two valid conditions of community custody—the condition prohibiting use or possession of sexually explicit materials and the associated Internet monitoring condition. The record is replete with support for the ISRB's findings that Thompson violated these conditions. In June 2019, Thompson failed a polygraph examination regarding whether he had viewed sexually explicit materials in violation of the condition of his community custody. CCO Strasburger thereafter searched Thompson's cell phone, on which she discovered significant amounts of pornography and Internet searches for "[y]oung teen girls." Following another failed polygraph examination, Thompson reported to CCO Dalton that he had been shown

29

pornographic videos by a coworker. In response, the ISRB imposed the Internet monitoring condition. Then, in February 2021, Thompson failed a third polygraph examination, which indicated that he had viewed sexually explicit materials and violated the Internet monitoring condition. Thompson reported to his CCO that he had watched pornographic DVDs provided to him by a friend and used his friends' devices to "browse the Internet."

At the violation hearing, Thompson pleaded "guilty" to violating the Internet monitoring condition. He pleaded "not guilty" to violating the condition prohibiting the use or possession of sexually explicit materials. The hearing officer found Thompson guilty of violating both of these conditions. In so doing, the hearing officer noted that Thompson had three violation processes in 2019 regarding pornography usage and failing to engage in a sexual deviancy evaluation. She detailed the extensive evidence regarding Thompson's multiple violations of the valid conditions, including Thompson's disclosures to his CCO that he had used friends' Internet-capable devices to access the Internet and had friends buy him pornographic DVDs. The hearing officer noted that Thompson had made the disclosures following polygraph examinations that indicated deception in his answers regarding the use of pornography and unapproved Internet-capable devices. She acknowledged Thompson's testimony that he had been lying when he made the disclosures. However, she found that testimony to be not "credible because of the history [Thompson] has with his CCO for this type of disclosure." The ISRB concluded that revocation of Thompson's community custody "would be in the best interest of the public."

30

Contrary to Thompson's assertion here, ample evidence was presented regarding his violation of the "sexually explicit materials" and Internet monitoring conditions. Although not every violation found was premised on a valid condition of community custody, the ISRB is authorized to revoke an offender's community custody if the offender "violates any condition or requirement" imposed as a part of the offender's supervised release. RCW 9.95.435(1). We afford "substantial deference" to such determinations. Campbell, No. 57303-2-II, slip op. at 7. Moreover, we defer to the trier of fact on issues of conflicting testimony and the credibility of witnesses. State v. Rafay, 168 Wn. App. 734, 843, 285 P.3d 83 (2012). Although Thompson disagrees with the weight afforded by the hearing examiner to certain evidence, he has not shown that, in revoking his community custody, the ISRB "fail[ed] to follow its own procedural rules" or "base[d] its decision solely on speculation and conjecture." Campbell, No. 57303-2-II, slip op. at 7.

Thompson has failed to demonstrate that he is entitled to relief. Accordingly, we deny his petition.

WE CONCUR:

Feldman, J.          Díaz, J.